**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

**HUGO SANCHEZ GONZALEZ,**
Plaintiff,

v.

**WARDEN MDC GUAYNABO,**
Defendant.

CIVIL NO. 25-cv-01035 (FAB)

**MOTION TO DISMISS PURSUANT TO F.R.C.P 12(b)(1) and 12(b)(6)**

**TO THE HONORABLE COURT:**

**COMES NOW**, the United States of America, on behalf of the Bureau of Prisons (the "United States"), and respectfully moves this Court to dismiss the plaintiff's claims pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## I.    INTRODUCTION

Plaintiff filed a Petition for Habeas Corpus relief through which he seeks that the Court order the Bureau Of Prisons (the "BOP") to reapply 365 days of alleged earned time credits under the First Step Act ("FSA") and revise his release date accordingly. DE# 1. He modified his petition by filing an Amended Complaint on June 27, 2025. DE # 13.

Plaintiff's request for relief is both procedurally and substantively without merit. First, Plaintiff has failed to exhaust administrative remedies as required by the Prison Litigation Reform Act ("PLRA") and the BOP's Administrative Remedy Program, resulting in a lack of subject matter jurisdiction by this Court. Second, the FSA explicitly provides that earned time credits do not apply to individuals subject to a final order of removal, such as Plaintiff. Therefore, his petition fails to state a claim upon which relief can be granted.

1

For these reasons, the Court should deny Plaintiff's request for relief and dismiss this cause of action.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

1.    Plaintiff is a Mexican national.

2.    On February 5, 2014, Plaintiff received a final order of removal issued against him under alien number A-205-061-550, prohibiting him from reentering the United States for a period of 5 years. *See* Attachment #1. Contrary to his allegation in the Amended Compliant, DE #13, p. 3 ¶ 16, he received, signed and printed his right index finger on the order of removal form. *See* Attachment #1, p. 1.

3.    On September 4, 2014, he received yet another order of removal—this time, prohibiting him from reentering the United States for 20 years. *See* Attachment #2. Contrary to his allegation in the Amended Compliant, DE #13, p.3 ¶ 16, he also received, signed and printed his right index finger on the second order of removal form. *See* Attachment #2, p. 2.

4.    Although Plaintiff alleges in his *Amended Complaint* that he has "never received notice of the commencement of immigration proceedings against him…" (DE # 13, p. 3) he has, as a matter of uncontested fact, been the subject to two final orders of removal which he personally received, signed and fingerprinted. *See* Attachments *#1-2.*

5.    The Plaintiff also received a Notice of Intent/Decision to Reinstate Prior Order of removal on September 24, 2014, contrary to his allegations in the Amended Complaint. *See* Attachment #5 and DE #13, p. 3 ¶15.

6.    On November 14, 2018, Plaintiff was sentenced to 120 months of imprisonment after being convicted for one count of conspiracy to distribute 50 grams or more of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and §846. *See United States v. Sanchez-Gonzalez,* No. 3:17-cr-2201-CAB DE# 172.

7.      Plaintiff also claims that there "is no record of the date in which the detainer was received." DE #13, p. 2. However, on September 4, 2019, the Department of Homeland Security ("DHS") issued an DHS Form I-247 Immigration Detainer and Notice of Action notifying the BOP that there was final order of removal issued against Plaintiff. *See* Attachment #4, p. 1; DE # 13-2.

8.      On May 2, 2025, DHS issued a second Immigration Detainer notifying the BOP that there was final order of removal issued against Plaintiff and that there were ongoing removal proceedings pending against Plaintiff. *Id.*, p. 4.

9.      On August 21, 2024, Plaintiff filed a request for administrative remedy ("BP-09 Form") seeking application of earned time credits under FSA. *See* Attachment #3, p. 39 ("ABSTRACT: I/M REQUESTING FSA CREDITS BE APPLIED").

10.     On August 26, 2024, the Warden denied the BP-09 request because Plaintiff was ineligible due to being the subject of a final order of removal.  *See* Attachment #3, p. 36 ("STATUS DT: 08-26-2024 STATUS CODE: CLD STATUS REASON: DNY") and p. 40.

11.     On September 19, 2024, Plaintiff appealed the denial of the BP-9 by filing a BP-10 Form with the BOP Regional Director. *See* Attachment #3, p 37.

12.     On April 10, 2025, BOP issued a response to the BP-10 where it **erroneously stated** that Plaintiff did not currently have a final order of removal under immigration laws and was eligible to earn First Step Act time credits. *See* DE # 13-3.

13.     On April 10, 2025, an Amended Response to Plaintiff's BP-10 Form was issued **to correct** BOP's explanation of the impact of the Plaintiff's ICE detainer on his ability to obtain FSA credit. *See* Attachment 3, p. 42. The Amended Response explained that the BOP "received from the U.S. Department of Homeland Security an Immigration Detainer — Notice of Action

dated September 5, 2019, which states that there is a final order of removal against you. Accordingly, by law the BOP may not apply any FTCs you have earned toward either prerelease custody or early transfer to supervised release." *Id.*

14.     On May 13, 2025, the BP-10 Form was denied for the same reason stated in the previous denial: Plaintiff is subject to a final order of removal. *See* Attachment #3, p. 3 ¶ 18 and p. 37 ("STATUS DR: 05-13-2025 STATUS COD: CLD STATUS REASON: DNY" … "REMARKS ..: AMENDED CORRECTION DUE TO INMATE SUBJECT TO A FINAL ORDER OF REMOVAL").

15.     Plaintiff did not file an appeal of the May 13, 2025, adjudication to the BOP's Office of General Counsel through a "BP-11" Form, which was the next course of action if Plaintiff wanted to move forward with his claim. *See* Attachment #3, p. 3 ¶ 19.

16.     Plaintiff filed an Amended Complaint on June 27, 2025. DE # 13.

17.     On July 21, 2025, the BOP provided initial disclosures to the Plaintiff through counsel of record (*see* Attachment #6) that included the following documents:

    a. Notice to Alien Ordered Removed, issued by the Department of Homeland Security ("DHS") to your client, Hugo Alfonso Sanchez-Gonzalez, Alien Number A205-061-550, on February 5, 2014, informing him of a five-year prohibition on entering the United States. This notice includes a photograph and fingerprint confirming his removal from the United States on February 6, 2014. (Exhibit 1, p. 1). Attachment #1, p. 1 to this motion.

    b. Notice and Order of Expedited Removal, issued by DHS to your client on February 5, 2014, because of entry without inspection at or near San Ysidro, California. (Exhibit 1, p. 2). Attachment #1, page 2 to this motion.

    c. Warrant of Removal/Deportation, issued by DHS on September 4, 2014, which includes a photograph and the signature of your client. (Exhibit 1, pp. 4-5). Attachment #2, pp.1-2 to this motion.

    d. Warning to Alien Ordered Removed or Deported, issued by DHS on September 4, 2014, which informs your client of a 20-year prohibition on reentry following his illegal reentry and reinstatement of the prior removal

order pursuant to Section 241(a) of the Immigration and Nationality Act. (Exhibit 1, p. 6). Attachment #2, p. 3 of this motion.

e.  Notice of Intent/Decision to Reinstate Prior Order, issued by DHS on September 24, 2014, which your client did not contest. (Exhibit 1, p. 7). Attachment #5 to this motion.

f.  Immigration Detainer – Notice of Action, issued by DHS on September 4, 2019, against your client, based on the reinstated order, confirmed through biometric data and federal database checks. (Exhibit 1, p. 8). Attachment #4 p. 1.

g.  Immigration Detainer – Notice of Action, issued by DHS on May 2, 2025, again premised on the reinstated order, and substantiated by biometric confirmation, statements by your client, and ongoing removal proceedings. (Exhibit 1, p. 11). Attachment #4, p. 4.

18.     Therefore, Plaintiff has not exhausted administrative remedies pursuant to the Administrative Remedy Program, as he has not opted for a BP-231(13), commonly referred to as a "BP-11" form.  *See* Attachment #3, p. 3 ¶ 21.

## III.    STANDARD OF REVIEW

### A.  Lack of Subject Matter Jurisdiction Pursuant to F.R.C.P 12(b)(1)

Federal courts are courts of limited jurisdiction. *Destek Grp. v. State of N.H. Pub. Utils. Comm'n.*, 318 F.3d 32, 38 (1st Cir. 2003). Accordingly, "federal courts have the duty to construe their jurisdictional grants narrowly." *Laguer v. United States*, 257 F. Supp. 3d 198 (D.P.R. 2017). Plaintiffs cannot survive a request for dismissal under Fed.R.Civ.P. 12(b)(1) if they do not satisfy the burden of proving jurisdiction. *See Aversa v. United States*, 99 F. 3d 1200 (1st Cir. 1996); *Tosco Corp. v. Communities for a Better Environment*, 236 F.3d 495, 499 (9th Cir. 2001). Federal courts are obligated to resolve questions pertaining to subject-matter jurisdiction before addressing the merits of a case. *Acosta-Ramirez v. Banco Popular de Puerto Rico*, 712 F.3d 14 (1st Cir. 2013) (citations omitted).

Once the subject matter jurisdiction is challenged, it is upon the party asserting jurisdiction to demonstrate its existence. *Gordo-Gonzáles v. United States*, 2016 U.S. Dist. LEXIS 191076 (D.P.R. 2016). "Federal courts are not at liberty to overlook limitations on their subject matter jurisdiction." *A.M. Francis v. Goodman*, 81 F.3d 5, 8 (1st Cir. 1996). If the court determines, as a threshold matter, that subject matter jurisdiction does not exist, it must dismiss the case and not make any determination on the merits of the same. *Menéndez v. United States*, 67 F. Supp. 2d 42, 45 (D.P.R. 1999).

Courts have an affirmative duty to ensure they are acting within their jurisdiction, which includes assessing mootness. *See Han*, 223 F. Supp. 3d at 102-03 (citing *Abu Ali v. Gonzales*, 387 F.Supp.2d 16, 17 (D.D.C. 2005)); *see also Fraternal Order of Police, D.C. v. Rubin*, 134 F.Supp.2d 39, 44 (D.D.C. 2001) (granting 12(b)(l) motion to dismiss on mootness grounds).

This analysis is necessary because "[a] court's authority to hear a particular case is a necessary precondition to the proper performance of the judicial function. Thus, when a fact bound jurisdictional question looms, a court must be allowed considerable leeway in weighing the proof, drawing reasonable inferences, and satisfying itself that subject-matter jurisdiction has attached." *Valentin*, 254 F.3d at 364 (citing *Williamson v. Tucker*, 645 F.2d 404, 412-13 (5th Cir. 1981)).

### B. Failure to State a Claim Upon Which Relief Can Be Granted Pursuant to F.R.C.P. 12(b)(6)

Motions to dismiss habeas petitions are examined according to the same principles as a motion to dismiss a civil complaint under Federal Rule of Civil Procedure 12(b)(6)." *Walsh v. Boncher*, 652 F. Supp. 3d 161, 164-65 (D. Mass. 2023) (citing cases in which Rule 12(b)(6) standard was applied to habeas petition brought under 28 U.S.C. §§ 2241 and 2254). As indicated in *Walsh v. Boncher*, supra, 2023 WL 363591, at *2, precisely in the context of a

§ 2241 petition, "[a] court examines 'a motion to dismiss a habeas petition according to the same principles as a motion to dismiss a civil complaint under Federal Rule of Civil Procedure 12(b)(6)'.". Thus, to survive a motion to dismiss, the complaint must contain enough facts to state a claim to relief that is plausible on its face. *Id*., citing, among others, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

In evaluating whether Plaintiffs are entitled to relief, the court must accept as true all "well-pleaded facts [and indulge] all reasonable inferences" in plaintiffs' favor." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). To survive a Rule 12(b)(6) motion to dismiss, Plaintiffs' "well-pleaded facts must possess enough heft to show that they are entitled to relief." *Clark v. Boscher*, 514 F.3d 107, 112 (1st Cir. 2008). The First Circuit has held that "dismissal for failure to state a claim is appropriate if the complaint fails to set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008).

Thus, Plaintiffs must rely on more than unsupported conclusions or interpretations of law, as these will be rejected. *Berner v. Delahanty*, 129 F.3d 20, 25 (1st Cir. 1997) (citing *Gooleyv. Mobil Oil Corp.*, 851 F.2d 513,515 (1st Cir. 1988)). Although complaints do not require detailed factual allegations, the plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Twombly*, at 556.

In *Ashcroft v. Igbal*, 556 U.S. 662 (2009), the Supreme Court of the United States ("Supreme Court") reaffirmed *Twombly* and clarified that two underlying principles must guide a court's assessment of the adequacy of pleadings when evaluating whether a complaint can survive a Rule 12(b)(6) motion. *See Igbal*, 556 U.S. at 677-79. First, the court must identify any conclusory allegations in the complaint as such allegations are not entitled to an assumption of

truth. *Id.* at 679. Specifically, the court is not obligated to accept legal conclusions set forth as factual allegations in the complaint. *Id.* Moreover, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (quoting *Twombly*, 550 U.S. at 555). Second, a complaint survives only if it states a plausible claim for relief. *Id.* (citing *Twombly*, 550 U.S. at 556). Thus, any nonconclusory factual allegations in the complaint, accepted as true, must be sufficient to give the claim facial plausibility. *Id.*

## IV.    LACK OF SUBJECT MATTER JURISDICTION FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES

### A.  Prison Litigation Reform Act ("PLRA")

The Prison Litigation Reform Act ("PLRA") mandates that no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted. 42 U.S.C. § 1997e(a). Exhaustion of all available administrative remedies is "mandatory".  *Casanova v. Dubois*, 289 F.3d 142, 147 (1st Cir. 2002); and *Casanova v. Dubois*, 2002 WL 1613715 at *6 (D.Mass. July 22, 2002) ("exhaustion requirement ... is a condition precedent of federal relief.").

Prisoners challenging their conditions of confinement are required to exhaust administrative remedies before they may petition for habeas corpus relief under 28 U.S.C. § 2241. *Rogers v. United States*, 180 F.3d 349, 358 (1st Cir. 1999) ("Once administrative remedies are exhausted, see 28 C.F.R. §§ 542.10-542.16, prisoners may then seek judicial review of any jail-time credit determination . . . by filing a habeas petition under 28 U.S.C. § 2241" (internal citation omitted)); *see Levine v. U.S. Dep't of Federal Bureau of Prisons*, Civil Action No. 20-cv11833-ADB, 2021 WL 681689, at * 3 (Feb. 22, 2021) (§ 2241 habeas petition seeking

sentence credit subject to dismissal if prisoner fails to exhaust his administrative remedies with the BOP (and cases cited)).

The PLRA defines a "prisoner" as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). This means that prisoners like Plaintiff must fully exhaust available administrative remedies before suing to challenge prison conditions. *Ross v. Blake*, 578 U.S. 632, 635 (2016). *See* pages 6-10, at DE #58 in *Peralta v. Warden Adan*, Case No. 24-1575 (CVR), outlining the applicable law on PLRA exhaustion in an ongoing case also against BOP officials in our district.

### B. Administrative Remedy Program

The Bureau of Prisons ("BOP") has an established Administrative Remedy Program allowing inmates to formally seek review of any issue relating to their confinement. *See* 28 C.F.R. §§ 542.10–542.19 (1998). The Program requires inmates to follow a multi-step process before seeking judicial intervention.

First, he or she must attempt to resolve the complaint informally with the staff. 28 C.F.R. § 542.13(a). If an informal resolution cannot be reached, then the person must submit a formal written Administrative Remedy Request to the Warden through a "BP-9" form within 20 days of the events which form the basis of the request. 28 C.F.R. § 542.14(a).

If the inmate is unsatisfied with the Warden's response to the BP-9 request, he or she may submit an appeal to the Regional Director via a "BP-10" form within 20 days of the date the Warden signed the BP-9 response form. 28 C.F.R. § 542.15(a).

Finally, an inmate disappointed with the Regional Director's response may appeal to the agency's Office of General Counsel using a "BP-11" form within 30 days of the date the Regional Director signed the response, and that would be the final administrative appeal. *Id.*

These steps are mandatory unless the inmate demonstrates a valid, recognized exception such as lack of available remedies or agency bias. Courts have consistently required full exhaustion under the Prison Litigation Reform Act ("PLRA") before entertaining suits relating to prison conditions, including those involving sentence credit calculations. *Ross v. Blake*, 578 U.S. 632, 635 (2016).

### C.  First Step Act ("FSA")

The First Step Act ("FSA"), Pub. L. No. 115-391, 132 Stat. 5194 (2018), authorizes eligible prisoners to earn time credits for completing recidivism reduction programs. 18 U.S.C. § 3632(d)(4). However, Congress explicitly excluded inmates who are subject to a final order of removal from applying those credits towards prerelease custody or early supervised release. 18 U.S.C. § 3632(d)(4)(E)(i); *see also* 8 U.S.C. § 1101(a)(17) (defining "immigration laws"). Thus, even if an inmate earns FSA credits, they are statutorily ineligible to have those credits applied if they are subject to a final removal order. Therefore, when an inmate challenges BOP's calculation or application of FSA credits, the court must first determine: (1) whether the inmate has fully exhausted the Administrative Remedy Program, and (2) whether the inmate is substantively eligible for such credits under § 3632.

### D.  Plaintiff Failed to Exhaust Administrative Remedies: Complaint Must be Dismissed

In the present case, Plaintiff did not exhaust the administrative remedies. *See* Declaration of Livanis Rivera, Paralegal Specialist. Attachment #3, p. 1-3. The procedures for challenging a decision of confinement by the BOP are detailed in the Administrative Remedy Program. 28 C.F.R. §§ 542.10 *et seq.* Upon exhaustion of these administrative remedies, then the person

can proceed to file the habeas petition in Court. *Nygren v. Boncher*, 578 F. Supp. 3d 146, 152 (D. Mass. 2021).

Plaintiff failed to exhaust administrative remedies by *not filing the BP-11* form but claims that exhausting administrative remedies in this case would be futile because of BOP's allegedly wrongful construction of the FSA's plain language. *See* DE# 13. However, he does not provide any facts to support such futility claim, nor to explain how that conclusory allegation even falls within the circumstances. In absence of any specific facts in the Petition that establish that the claim's futility is plausible on its face, as required by the Fed. R. Civ. P. 12(b)(6) standards, the futility contention should be rejected without further ado.

The lack of exhaustion in and of itself is sufficient ground for the Court to dismiss Plaintiff's petition for relief because dismissal for failure to exhaust is mandatory. *Maraglia v. Maloney*, 365 F.Supp.2d 76, 80 (D. Mass. 2005) ("While exhaustion under the PLRA is not jurisdictional, it is mandatory for inmates to satisfy this requirement before bringing an action in a court of law.") (citing *Porter*, 534 U.S. at 520). Consequently, the Defendant requests the Court dismiss the Amended Complaint for lack of exhaustion under the PLRA.

In summary, a district court should dismiss such a petition under Fed. R. Civ. P. 12(b)(6) when the underlying allegations fail to state a "plausible entitlement to relief". *Araujo v. UGL Unicco-Unicco Operations*, 53 F.Supp.3d 371, 378 (D. Mass. 2014).

## V. PLAINTIFF FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

### A. Plaintiff's claim is ultimately without merit

Plaintiff is ineligible for FSA credits because he is subject to a final order of removal as established in the DHS Forms I-247 Immigration Detainer and Notice of Action dated September 4, 2019 and May 2, 2025. *See* Attachment #4, p. 1 and 4. Contrary to his allegations

11

in the Amended Complaint where he claims that on the BP-10 Response of April 10, 2025, the Regional Director responded that there was no final order of removal, Plaintiff has always been well aware of the two final orders of removal issued against him on February 5 and September 4, 2014, because he personally signed and imprinted his right index finger in both documents. *See* Attachments # 1 and 2. Even more so, in ¶17 of Plaintiff's *Amended Complaint*, Plaintiff acknowledges that FSA language expressly excludes a prisoner subject of a final order of removal from having FSA credits applied toward prerelease custody or early transfer to supervised release. DE # 13, p. 4 ¶ 17; *see also* 18 U.S.C.A. § 3632(E)(i) ("A prisoner is ineligible to apply time credits under subparagraph (C) if the prisoner is the subject of a final order of removal under any provision of the immigration laws (as such term is defined in section 101(a)(17) of the Immigration and Nationality Act (8 U.S.C. 1101(a)(17)))."). Accordingly, as provided by the applicable federal law, since Plaintiff is statutorily ineligible to receive FSA credits because of his final order of removal, the Petition should be denied.

Beyond the statutory exclusion, Plaintiff's attempt to dispute the existence of a final order of removal cannot withstand scrutiny. The existing final orders of removal resolve any doubt on this matter. Plaintiff's unsupported claim that he is merely subject to a "detainer" is directly contradicted by these official orders, and he always knew about their existence. *See* Attachments # 1 and 2. The Bureau of Prisons, therefore, acted properly in determining that Plaintiff is ineligible for FSA credits and in denying his requests at each administrative level.

Plaintiff's attempt to play a game of gotcha with federal agencies is not a substantive basis for entertaining his frivolous claim. His baseless demand that BOP "produce a copy of the final order of removal" before implementing the strictures of 18 U.S.C § 3632 to deny him FSA credits was and continues to be without merit. The Court should not credit Plaintiff's baseless

allegations and demand over removal orders Plaintiff was fully cognizant existed and curtailed his claims. *See* Attachments # 1 and 2.

Furthermore, the statutory framework of the First Step Act removes any discretion from the Court to grant the requested relief: prisoners subject to final removal orders are categorically excluded from eligibility for time credits. Congress's use of mandatory language ("is ineligible") leaves no room for judicial reinterpretation. Plaintiff's insistence on eligibility, despite the unambiguous statute demonstrates not a legitimate legal controversy but an attempt to secure benefits Congress has deliberately withheld from noncitizen inmates under final removal orders. His claim must therefore be dismissed.

### B.  Detainer is an Official Document from a Government Agency

Furthermore, Plaintiff attempts to minimize the weight of the immigration detainer issued against him, but this argument collapses under the facts of record. The Department of Homeland Security ("DHS") issued to the BOP two Forms I-247 Immigration Detainer and Notice of Action expressly notifying the agency that Plaintiff was subject to a final order of removal and therefore not eligible for the application of earned time credits. A detainer of this nature is not an informal memorandum or suggestion; it is an official document generated by a federal agency charged with enforcing immigration law. Its issuance carries legal consequences, including the confirmation of the existence of an enforceable removal order. The Bureau of Prisons properly relied on this DHS detainer when denying Plaintiff's BP-9 and BP-10 administrative remedies. The Warden and the Regional Director did not manufacture a new basis to deny Plaintiff's request. Rather, they applied the plain statutory language of the FSA, which excludes inmates with final order of removal from receiving earned time credits. Their consistent reliance on DHS's official communication underscores that the denial of credits was not arbitrary but grounded in the law and in government records.

Plaintiff's attempt to highlight an erroneous agency response on April 10, 2025, that mistakenly stated he was not subject to a final order of removal (DE #13-3) but was diligently corrected on May 12, 2025 (Attachment # 3, p. 42), does not change the factual background and legal consequences in this case. The BOP's May 12, 2025 Amended Response, which corrected the error and unequivocally confirmed that Plaintiff is in fact subject to a final order of removal and therefore ineligible for FSA credits, was notified to Plaintiff prior to the filing of the Amended Complaint.

Agencies not only may, but are obligated, to amend or correct prior misstatements when new information or clarification is required. That is precisely what occurred here. A clerical or interpretive mistake does not invalidate the controlling fact that Plaintiff is legally subject to a final removal order; it simply underscores the agency's duty to ensure the record is accurate. Courts have long recognized that administrative agencies may issue amended determinations to correct errors, and such corrections carry full legal effect. The amended response reflects the true and operative determination of Plaintiff's status, and the Court must credit the corrected agency record over Plaintiff's self-serving assertions.

Moreover, Plaintiff's insistence on dismissing the detainer's authority is belied by his failure to pursue the final administrative step available to him, the BP-11 appeal to the Office of General Counsel. His choice to bypass this final review confirms that he seeks to circumvent the administrative system entirely and place before this Court issues that remain unexhausted. This failure strips his petition of any procedural legitimacy.

Ultimately, the detainer and the amended agency response are official government records that directly resolve the eligibility question. The BOP acted reasonably and lawfully in denying Plaintiff's requests based on these documents. Plaintiff's disregard of these official

14

determinations does not erase their existence or their legal effect. The Court should therefore give full weight to the detainer and the amended response as evidence of a final removal order and dismiss Plaintiff's petition, both because he has not exhausted the required administrative process and because the law renders him ineligible for the relief he seeks.

## VI.    CONCLUSION

For the foregoing reasons, Plaintiff's petition should be dismissed. He has not completed the mandatory exhaustion of administrative remedies, having stopped short of the final BP-11 appeal. Even if he had, his claim fails as a matter of law because he is statutorily ineligible for First Step Act credits due to his final orders of removal, as confirmed by DHS's official detainer. Plaintiff's allegations are conclusory, unsupported by facts, and squarely foreclosed by the governing statutes.

**WHEREFORE**, Defendant respectfully requests that this Honorable Court dismiss Plaintiff's Petition for Writ of Habeas Corpus and Amended Complaint in its entirety pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

**I HEREBY CERTIFY** that on this date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to all parties.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, on December 18, 2025.

**W. STEPHEN MULDROW**
United States Attorney

*s/Dennise N. Longo Quiñones*
DENNISE N. LONGO QUIÑONES[1]
Assistant U.S. Attorney
USDC-PR 211408
Torre Chardón, Suite 1201
350 Carlos Chardón St.
San Juan, Puerto Rico 00918
Tel. (787) 282-1928
Fax. (787) 771-4043
E-mail dennise.longo.quinones@usdoj.gov

---

[1] The United States acknowledges the diligent assistance provided by Law Clerk Alondra Balzac Santini in the preparation of this dispositive motion.