IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

HUGO SANCHEZ GONZALEZ

Petitioner,

v.

WARDEN FRANCES A. RIVERA

Respondent.

CIVIL CASE NO.: 25-1035
(FAB)

## DECLARATION OF LIVANIS RIVERA, PARALEGAL SPECIALIST

In accordance with the provisions of 28 U.S.C. §1746, I Livanis Rivera, do hereby make the following declaration under penalty of perjury, pertinent to the above-styled action:

1. I am presently employed by the Federal Bureau of Prisons as a Paralegal Specialist in the Metropolitan Detention Center (MDC) at Guaynabo, Puerto Rico. I have been employed as a Paralegal Specialist at MDC Guaynabo since October 2023. I have been with the BOP since 2015.

2. I have access to the Bureau of Prison's computerized data base records known as SENTRY. In this database, I am able to retrieve the information pertaining to the filing of the administrative remedies by inmates through their register numbers. As a paralegal I am familiar with the Bureau of Prisons Program Statement 1330.18, Administrative Remedy Program, and the processing of inmate administrative remedies. I have access to official records compiled and maintained by the BOP in the regular course of business, many of which are located in the BOP's SENTRY computer database. I am also familiar with the BOP Content Manager Database, which is used to process and track the filing of administrative and judicial cases in which the BOP and/or BOP staff is a party.

3. The Federal Bureau of Prisons has established an administrative remedy procedure through which an inmate may seek review of a grievance related to any aspect of their imprisonment. 28 C.F.R. § 542 *et seq.* Under the applicable regulations, an inmate must generally first seek to resolve an issue of concern informally by presenting the issue to correctional staff. 28 C.F.R. § 542.13. If this does not resolve the matter, an inmate must submit a formal written administrative remedy request within 20 days of the incident giving rise to the grievance. *Id.* § 542.14. Administrative Remedy Form BP-229 (13) is the form to be utilized at the institution level. This form is commonly referred to as a "BP-9" form.

1

4.     If unsatisfied with the Warden's response to the BP-9 administrative remedy request, an inmate may take an initial appeal to the appropriate regional director within 20 days of when the Warden signed the response. *Id.* § 542.15. Administrative Remedy Form BP-230(13) is the form to be utilized at the regional level. This form is commonly referred to as a "BP-10" form.

5.     If unsatisfied with the Regional Director's response, an inmate may take a final appeal to the BOP's Office of General Counsel in Washington, D.C., within 30 days of when the Regional Director signed the response. *Id.* An appeal to the BOP's Office of General Counsel is the final step in the BOP's administrative remedy process. Administrative Remedy Form BP-231(13) is the form to be utilized at the final level. This form is commonly referred to as a "BP-11" form.

6.     If the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level.

7.     The procedures discussed above are also outlined in BOP Program Statement, 1330.18, Administrative Remedy Program.

8.     Relevant portions of BOP Program Statement, 1330.18 are included as **Attachment #1** to this declaration.

9.     The administrative process which inmates must exhaust when they have complaints under the Federal Torts Claim Act (FTCA) is spelled out at 28 C.F.R. §§ 14.1 to 14.11 and 543.30 to 543.32 and the process is different from the exhaustion requirements of the BOP Administrative Remedy Program for non FTCA claims.

10.    To exhaust administrative remedies as required by the FTCA before filing an action under the FTCA, an inmate must first submit an administrative claim including a claim for money damages in a sum certain for the alleged injury sustained on a Standard Form 95 (or other written notification) to the federal agency whose alleged activities gave rise to the claim. 28 C.F.R. § 14.2(a) and (b)(1). After investigation and examination, the agency may deny or approve the claim. If the agency denies the inmate's claim, he may file suit in the District Court within six months of the mailing of the denial. 28 C.F.R. §§ 14.6, 14.8 and 14.9(a). The Director of the BOP is authorized to settle meritorious claims by providing monetary compensation. 28 C.F.R. §§ 0.96(k) and 0.172.

11.    The procedures outlined above are also outlined in BOP Program Statement, 1320.07, Federal Tort Claims Act.

12.    Relevant portions of BOP Program Statement, 1320.07, are attached as **Attachment #2** to this Declaration.

13.    I have personally reviewed inmate Hugo Sanchez-Gonzalez's BOP administrative remedy records, including whether Sanchez-Gonzalez has filed an administrative tort claim under the FTCA related to the Federal Bureau of Prisons' alleged failure to properly credit his First Step Act (FSA) time credits.

2

14.     Plaintiff Hugo Sanchez-Gonzalez, register number 63470-298, is a federal inmate currently incarcerated in MDC Guaynabo (GUA). Attached hereto as **Attachment #3** is a true and correct copy of Sanchez-Gonzalez's BOP Public Information Data.

15.     For the reasons explained below, he has not exhausted the BOP administrative remedy process with respect to his allegations in this lawsuit.

16.     On July 8, 2024, Sanchez-Gonzalez filed an administrative remedy requesting a compassionate release (RIS) to the Warden at MDC Guaynabo. The remedy was assigned ID number **1204843-F1.** On August 12, 2024, the request was denied substantially in full (CLD) (DNY). See **Attachment #4** to this declaration: Administrative Remedy Generalized Retrieval.

17.     On August 21, 2024, Sanchez-Gonzalez filed an administrative remedy (BP-09) to the Warden at MDC Guaynabo (GUA). The remedy was assigned ID number **1209958-F1**. The abstract of the request shows that Sanchez-Gonzalez made a request for FSA credits to be applied. On August 26, 2024, the request was denied substantially in full (CLD) (DNY) for the following reason: You request for Administrative Remedy is denied as you are subject to a final order of removal by Immigration and Customs Enforcement. See **Attachment #4** and **Attachment #5**: Request for Administrative Remedy 1227931-F1 (BP-9) and response.

18.     On September 19, 2024, Sanchez-Gonzalez appealed the denial of the BP-9, by filing a BP-10 form with the Regional Director. The remedy was assigned ID number **1209958-R1**. On May 13, 2025, following an amendment to a previous response dated April 2025, the request was substantially denied in full (CLD) (DNY) for the following reason: Amended correction due to inmate subject to a final order of removal. See **Attachment #4** and **Attachment #6.**

19.     Sanchez-Gonzalez has not submitted and appeal (BP11) to the BOP's Office of General Counsel in Washington, D.C. See Attachment #4.

20.     A review of the Content Manager database revealed there are no FTCA administrative claims filed by Sanchez-Gonzalez with the BOP. See **Attachment #7** to this declaration: Content Manager Case Management Application Print Out.

21.     Sanchez-Gonzalez has not exhausted the BOP administrative remedy process with respect to the allegations in this lawsuit, as he has not filed any administrative remedy related to them.

I declare, under the penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct to the best of my knowledge.

Executed this 15 day of May 2025, in Guaynabo, Puerto Rico.

Livanis Rivera
Paralegal Specialist
Federal Bureau of Prisons
MDC Guaynabo

**Attachments:**

Attachment 1- Program Statement 1330.10, Administrative Remedy Program

Attachment 2- Program Statement 1320.07, Federal Tort Claims Act

Attachment 3- BOP Public Information Data- Sanchez-Gonzalez, Hugo Reg. No.63470-298

Attachment 4- Administrative Remedy Generalized Retrieval

Attachment 5- Request for Administrative Remedy 1209958-F1 (BP-9) and response.

Attachment 6- Regional Administrative Remedy Appeal 1209958-R1 (Amended Response)

Attachment 7- Content Manager Case Management Application Print Out

# ATTACHMENT 1

 **U.S. Department of Justice**
Federal Bureau of Prisons

P R O G R A M   S T A T E M E N T
OPI:        OGC/LIT
NUMBER:     1330.18
DATE:       January 6, 2014

# Administrative Remedy Program

*/s/*
*Approved*: Charles E. Samuels, Jr.
Director, Federal Bureau of Prisons

## 1. PURPOSE AND SCOPE §542.10

**a. Purpose. The purpose of the Administrative Remedy Program is to allow an inmate to seek formal review of an issue relating to any aspect of his/her own confinement. An inmate may not submit a Request or Appeal on behalf of another inmate.**

Inmates seeking a formal review of issues relating to sexual abuse should use the regulations promulgated by the Department of Justice under the Prison Rape Elimination Act, 42 U.S.C. § 15606, et seq. These procedures are provided in Section 16 of this Program Statement.

**b. Scope. This Program applies to all inmates in institutions operated by the Bureau of Prisons, to inmates designated to contract Community Corrections Centers (CCCs) under Bureau of Prisons responsibility, and to former inmates for issues that arose during their confinement. This Program does not apply to inmates confined in other non-federal facilities.**

The president of a recognized inmate organization may submit a request on behalf of that organization regarding an issue that specifically affects that organization.

**c. Statutorily-mandated Procedures. There are statutorily-mandated procedures in place for Tort claims (28 CFR 543, subpart C), Inmate Accident Compensation claims (28 CFR 301), and Freedom of Information Act or Privacy Act requests (28 CFR 513, subpart D). If an inmate raises an issue in a request or appeal that cannot be resolved through the Administrative Remedy Program, the Bureau will refer the inmate to the appropriate statutorily-mandated procedures.**

**Federal Regulations from 28 CFR are shown in this type.**
Implementing instructions are shown in this type.

2. **PROGRAM OBJECTIVES.** The expected results of this program are:

- A procedure will be available by which inmates will be able to have any issue related to their incarceration formally reviewed by high-level Bureau officials.
- Each request, including appeals, will be responded to within the time frames allowed.
- A record of Inmate Administrative Remedy Requests and Appeals will be maintained.
- Bureau policies will be more correctly interpreted and applied by staff.

3. **DIRECTIVES AFFECTED**

a. **Directive Rescinded**

P1330.17      Administrative Remedy Program (8/20/2012)

b. **Directives Referenced**

P1320.06      Federal Tort Claims Act (8/1/03)
P4500.08      Trust Fund/Deposit Fund Manual (5/4/12)
P5212.07      Control Unit Programs (2/20/01)
P5214.04      HIV Positive Inmates Who Pose Danger to Other, Procedures for Handling of (2/4/98)
P5264.08      Inmate Telephone Regulations (1/24/08)
P5270.09      Inmate Discipline Program (7/8/11)
P5324.11      Sexually Abusive Behavior Prevention and Intervention Program (12/31/13)
P5890.13      SENTRY - National On-Line Automated Information System (12/14/99)

28 CFR 301 Inmate Accident Compensation
28 CFR 16.10 Fees (for records requested pursuant to the Freedom of Information Act (FOIA))

c. Rules cited in this Program Statement are contained in 28 CFR 542.10 through 542.19; and 28 CFR Part 115 – Prison Rape Elimination Act National Standards

4. **STANDARDS REFERENCED**

- American Correctional Association 3rd Edition Standards for Adult Correctional Institutions: 3-4236 and 3-4271
- American Correctional Association 3rd Edition Standards for Adult Local Detention Facilities: 3-ALDF-3C-22, and 3-ALDF-3E-11 5.

5. **RESPONSIBILITY §542.11**

a. **The Community Corrections Manager (CCM), Warden, Regional Director, and General Counsel are responsible for the implementation and operation of the Administrative Remedy Program at the Community Corrections Center (CCC), institution, regional and Central Office levels, respectively, and shall:**

**(1) Establish procedures for receiving, recording, reviewing, investigating and responding to Administrative Remedy Requests (Requests) or Appeals (Appeals) submitted by an inmate;**

See Section 13 for further information on remedy processing, including use of SENTRY.

**(2) Acknowledge receipt of a Request or Appeal by returning a receipt to the inmate;**

The receipt is generated via SENTRY.

**(3) Conduct an investigation into each Request or Appeal;**

**(4) Respond to and sign all Requests or Appeals filed at their levels. At the regional level, signatory authority may be delegated to the Deputy Regional Director. At the Central Office level, signatory authority may be delegated to the National Inmate Appeals Administrator. Signatory authority extends to staff designated as acting in the capacities specified in this §542.11, but may not be further delegated without the written approval of the General Counsel.**

§ 542.11 refers to Section 5 of this Program Statement.

For purposes of this Program Statement, the term "institution" includes Community Corrections Centers (CCCs); the term "Warden" includes Camp Superintendents and Community Corrections Managers (CCMs) for Requests filed by CCC inmates; and the term "inmate" includes a former inmate who is entitled to use this program.

(5) The Warden shall appoint one staff member, ordinarily above the department head level, as the Administrative Remedy Coordinator (Coordinator) and one person to serve as Administrative Remedy Clerk (Clerk). The Regional Director and the National Inmate Appeals Administrator, Office of General Counsel, shall be advised of these appointees and any subsequent changes.

To coordinate the regional office program, each Regional Director shall also appoint an Administrative Remedy Coordinator of at least the Regional Administrator level, ordinarily the Regional Counsel, and an Administrative Remedy Clerk. The National Inmate Appeals Administrator, Office of General Counsel, shall be advised of these appointees and any subsequent changes.

(6) The Administrative Remedy Coordinator shall monitor the program's operation at the Coordinator's location and shall ensure that appropriate staff (e,g., Clerk, unit staff) have the knowledge needed to operate the procedure. The Coordinator is responsible for signing any rejection notices and ensuring the accuracy of SENTRY entries; e.g., abstracts, subject codes, status codes, and dates. The Coordinator also shall serve as the primary point of contact for the Warden or Regional Director in discussions of Administrative Remedies appealed to higher levels.

(7) The Administrative Remedy Clerk shall be responsible for all clerical processing of Administrative Remedies, for accurately maintaining the SENTRY index, and for generating SENTRY inmate notices.

(8) The Unit Manager is responsible for ensuring that inmate notices (receipts, extension notices, and receipt disregard notices from institutions, regions and the Central Office) are printed and delivered daily for inmates in their units and for deleting those notices from

P1330.18    01/06/2014    **Federal Regulations from 28 CFR: this type.**    Implementing instructions: this type.    3

SENTRY promptly after delivery to the inmate. CCMs are responsible for this function for inmates under their supervision.

**b. Inmates have the responsibility to use this Program in good faith and in an honest and straightforward manner.**

6. **RESERVED**

7. **INFORMAL RESOLUTION §542.13**

**a. Informal Resolution. Except as provided in §542.13(b), an inmate shall first present an issue of concern informally to staff, and staff shall attempt to informally resolve the issue before an inmate submits a Request for Administrative Remedy. Each warden shall establish procedures to allow for the informal resolution of inmate complaints.**

The Warden is responsible for ensuring that effective informal resolution procedures are in place and that good faith attempts at informal resolution are made in an orderly and timely manner by both inmates and staff. These procedures may not operate to limit inmate access to formal filing of a Request.

**b. Exceptions. Inmates in CCCs are not required to attempt informal resolution. An informal resolution attempt is not required prior to submission to the regional or Central Office as provided for in §542.14(d) of this part. An informal resolution attempt may be waived in individual cases at the Warden or institution Administrative Remedy Coordinator's discretion when the inmate demonstrates an acceptable reason for bypassing informal resolution.**

For example, the Warden may waive informal resolution for Unit Discipline Committee (UDC) appeals, or when informal resolution is deemed inappropriate due to the issue's sensitivity.

Although not mandatory, inmates may attempt informal resolution of DHO decisions. See the Program Statement **Inmate Discipline Program**.

8. **INITIAL FILING §542.14**

**a. Submission. The deadline for completion of informal resolution and submission of a formal written Administrative Remedy Request, on the appropriate form (BP-9), is 20 calendar days following the date on which the basis for the Request occurred.**

In accord with the settlement in *Washington* v. *Reno*, and for such period of time as this settlement remains in effect, the deadline for completing informal resolution and submitting a formal written Administrative Remedy Request, on the appropriate form (BP-9) (BP-229), for a disputed telephone charge, credit, or telephone service problem for which the inmate requests reimbursement to his/her telephone account, is 120 days from the date of the disputed telephone charge, credit, or telephone service problem.

Administrative Remedy Requests concerning telephone issues that do not involve billing disputes or requests for refunds for telephone service problems (such as Administrative Remedy

Requests concerning telephone privileges, telephone lists, or telephone access) are governed by the 20-day filing deadline.

**b. Extension. Where the inmate demonstrates a valid reason for delay, an extension in filing time may be allowed. In general, valid reason for delay means a situation which prevented the inmate from submitting the request within the established time frame. Valid reasons for delay include the following: an extended period in-transit during which the inmate was separated from documents needed to prepare the Request or Appeal; an extended period of time during which the inmate was physically incapable of preparing a Request or Appeal; an unusually long period taken for informal resolution attempts; indication by an inmate, verified by staff, that a response to the inmate's request for copies of dispositions requested under §542.19 of this part was delayed.**

Ordinarily, the inmate should submit written verification from staff for any claimed reason for delay.

If an inmate requests an Administrative Remedy form but has not attempted informal resolution, staff should counsel the inmate that informal resolution is ordinarily required. If the inmate nevertheless refuses to present a request informally, staff should provide the form for a formal Request. Upon receipt of the inmate's submission, the Coordinator shall accept the Request if, in the Coordinator's discretion, informal resolution was bypassed for valid reasons, or may reject it if there are no valid reasons for bypassing informal resolution.

**c. Form**

**(1) The inmate shall obtain the appropriate form from CCC staff or institution staff (ordinarily, the correctional counselor).**

The following forms are appropriate:

- Request for Administrative Remedy, Form BP-9 (BP-229), is appropriate for filing at the institution.
- Regional Administrative Remedy Appeal, Form BP-10 (BP-230), is appropriate for submitting an appeal to the regional office.
- Central Office Administrative Remedy Appeal, Form BP-11 (BP-231), is appropriate for submitting an appeal to the Central Office.

**(2) The inmate shall place a single complaint or a reasonable number of closely related issues on the form. If the inmate includes on a single form multiple unrelated issues, the submission shall be rejected and returned without response, and the inmate shall be advised to use a separate form for each unrelated issue. For DHO and UDC appeals, each separate incident report number must be appealed on a separate form.**

Placing a single issue or closely related issues on a single form facilitates indexing, and promotes efficient, timely and comprehensive attention to the issues raised.

(3) **The inmate shall complete the form with all requested identifying information and shall state the complaint in the space provided on the form. If more space is needed, the inmate may use up to one letter-size (8 1/2" by 11") continuation page.**

The inmate must provide an additional copy of any continuation page. The inmate must submit one copy of supporting exhibits. Exhibits will not be returned with the response. Because copies of exhibits must be filed for any appeal (see § 542.15 (b) (3)), the inmate is encouraged to retain a copy of all exhibits for his or her personal records.

(4) **The inmate shall date and sign the Request and submit it to the institution staff member designated to receive such Requests (ordinarily a correctional counselor). CCC inmates may mail their Requests to the CCM.**

d. **Exceptions to Initial Filing at Institution**

(1) **Sensitive Issues. If the inmate reasonably believes the issue is sensitive and the inmate's safety or well-being would be placed in danger if the Request became known at the institution, the inmate may submit the Request directly to the appropriate Regional Director. The inmate shall clearly mark "Sensitive" upon the Request and explain, in writing, the reason for not submitting the Request at the institution. If the Regional Administrative Remedy Coordinator agrees that the Request is sensitive, the Request shall be accepted. Otherwise, the Request will not be accepted, and the inmate shall be advised in writing of that determination, without a return of the Request. The inmate may pursue the matter by submitting an Administrative Remedy Request locally to the Warden. The Warden shall allow a reasonable extension of time for such a resubmission.**

(2) **DHO Appeals. DHO appeals shall be submitted initially to the Regional Director for the region where the inmate is currently located.**

See the Program Statement **Inmate Discipline Program**.

(3) **Control Unit Appeals. Appeals related to Executive Panel Reviews of Control Unit placement shall be submitted directly to the General Counsel.**

See the Program Statement **Control Unit Programs**.

(4) **Controlled Housing Status Appeals. Appeals related to the Regional Director's review of controlled housing status placement may be filed directly with the General Counsel.**

See the Program Statement **Procedures for Handling HIV Positive Inmates Who Pose Danger to Other.**

9. **APPEALS  § 542.15**

a. **Submission. An inmate who is not satisfied with the Warden's response may submit an Appeal on the appropriate form (BP-10) to the appropriate Regional**

**Attachment #3**

Director within 20 calendar days of the date the Warden signed the response. An inmate who is not satisfied with the Regional Director's response may submit an Appeal on the appropriate form (BP-11) to the General Counsel within 30 calendar days of the date the Regional Director signed the response. When the inmate demonstrates a valid reason for delay, these time limits may be extended. Valid reasons for delay include those situations described in §542.14(b) of this part. Appeal to the General Counsel is the final administrative appeal.

These deadlines specify the date of the Appeal's receipt in the regional office or the Central Office. The deadlines have been made deliberately long to allow sufficient mail time. Inmates should mail their Appeals promptly after receiving a response to ensure timely receipt. Ordinarily, the inmate must submit written verification from institution staff for any reason for delay that cannot be verified through SENTRY.

In many cases, courts require a proper Appeal to the General Counsel before an inmate may pursue the complaint in court.

**b. Form**

**(1) Appeals to the Regional Director shall be submitted on the form designed for regional Appeals (BP-10) and accompanied by one complete copy or duplicate original of the institution Request and response. Appeals to the General Counsel shall be submitted on the form designed for Central Office Appeals (BP-11) and accompanied by one complete copy or duplicate original of the institution and regional filings and their responses. Appeals shall state specifically the reason for appeal.**

**(2) An inmate may not raise in an Appeal issues not raised in the lower level filings. An inmate may not combine Appeals of separate lower level responses (different case numbers) into a single Appeal.**

**(3) An inmate shall complete the appropriate form with all requested identifying information and shall state the reasons for the Appeal in the space provided on the form. If more space is needed, the inmate may use up to one letter-size (8 1/2" x 11") continuation page. The inmate shall provide two additional copies of any continuation page and exhibits with the regional Appeal, and three additional copies with an Appeal to the Central Office (the inmate is also to provide copies of exhibits used at the prior level(s) of appeal). The inmate shall date and sign the Appeal and mail it to the appropriate Regional Director, if a Regional Appeal, or to the National Inmate Appeals Administrator, Office of General Counsel, if a Central Office Appeal (see 28 CFR part 503 for addresses of the Central Office and Regional Offices).**

c. **Processing**. The appropriate regional office to process the Appeal is the regional office for the institution where the inmate is confined at the time of mailing the Appeal, regardless of the institution that responded to the institution filing.

## 10. ASSISTANCE §542.16

**a. An inmate may obtain assistance from another inmate or from institution staff in preparing a Request or an Appeal. An inmate may also obtain assistance from outside sources, such as family members or attorneys. However, no person may submit a Request or Appeal on the inmate's behalf, and obtaining assistance will not be considered a valid reason for exceeding a time limit for submission unless the delay was caused by staff.**

**b. Wardens shall ensure that assistance is available for inmates who are illiterate, disabled, or who are not functionally literate in English. Such assistance includes provision of reasonable accommodation in order for an inmate with a disability to prepare and process a Request or an Appeal.**

For example, Wardens must ensure that staff (ordinarily unit staff) provide assistance in the preparation or submission of an Administrative Remedy or an Appeal upon being contacted by such inmates that they are experiencing a problem.

## 11. RESUBMISSION §542.17

**a. Rejections. The Coordinator at any level (CCM, institution, region, Central Office) may reject and return to the inmate without response a Request or an Appeal that is written by an inmate in a manner that is obscene or abusive, or does not meet any other requirement of this part.**

**b. Notice. When a submission is rejected, the inmate shall be provided a written notice, signed by the Administrative Remedy Coordinator, explaining the reason for rejection. If the defect on which the rejection is based is correctable, the notice shall inform the inmate of a reasonable time extension within which to correct the defect and resubmit the Request or Appeal.**

(1) **Sensitive Submissions**. Submissions for inmate claims which are too sensitive to be made known at the institution are not to be returned to the inmate. Only a rejection notice will be provided to the inmate. However, other rejected submissions ordinarily will be returned to the inmate with the rejection notice.

(2) **Defects**. Defects such as failure to sign a submission, failure to submit the required copies of a Request, Appeal, or attachments, or failure to enclose the required single copy of lower level submissions are examples of correctable defects.

Ordinarily, five calendar days from the date of the notice to the inmate is reasonable for resubmission at the institution level; at least 10 calendar days at the CCM or regional offices; and 15 calendar days at the Central Office.

(3) **Criteria for Rejection**. When deciding whether to reject a submission, Coordinators, especially at the institution level, should be flexible, keeping in mind that major purposes of this Program are to solve problems and be responsive to issues inmates raise. Thus, for example, consideration should be given to accepting a Request or Appeal that raises a sensitive or

problematic issue, such as medical treatment, sentence computation, or staff misconduct, even though that submission may be somewhat untimely.

**c. Appeal of Rejections. When a Request or Appeal is rejected and the inmate is not given an opportunity to correct the defect and resubmit, the inmate may appeal the rejection, including a rejection on the basis of an exception as described in §542.14 (d), to the next appeal level. The Coordinator at that level may affirm the rejection, may direct that the submission be accepted at the lower level (either upon the inmate's resubmission or direct return to that lower level), or may accept the submission for filing. The inmate shall be informed of the decision by delivery of either a receipt or rejection notice.**

## 12. RESPONSE TIME §542.18

**If accepted, a Request or Appeal is considered filed on the date it is logged into the Administrative Remedy Index as received. Once filed, response shall be made by the Warden or CCM within 20 calendar days; by the Regional Director within 30 calendar days; and by the General Counsel within 40 calendar days. If the Request is determined to be of an emergency nature which threatens the inmate's immediate health or welfare, the Warden shall respond not later than the third calendar day after filing. If the time period for response to a Request or Appeal is insufficient to make an appropriate decision, the time for response may be extended once by 20 days at the institution level, 30 days at the regional level, or 20 days at the Central Office level. Staff shall inform the inmate of this extension in writing. Staff shall respond in writing to all filed Requests or Appeals. If the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level.**

The date a Request or an Appeal is received in the Administrative Remedy index is entered into SENTRY as the "Date Rcv", and should be the date it is first received and date-stamped in the Administrative Remedy Clerk's office. Notice of extension ordinarily is made via SENTRY notice.

## 13. REMEDY PROCESSING

a. **Receipt**. Upon receiving a Request or Appeal, the Administrative Remedy Clerk shall stamp the form with the date received, log it into the SENTRY index as received on that date, and write the "Remedy ID" as assigned by SENTRY on the form. Once a submission is entered into the system, any subsequent submissions or appeals of that case shall be entered into SENTRY using the same Case Number. The "Case Number" is the purely numerical part of the "Remedy ID" which precedes the hyphen and "Submission ID."

All submissions received by the Clerk, whether accepted or rejected, shall be entered into SENTRY in accordance with the SENTRY Administrative Remedy Technical Reference Manual.

Sensitive issues, when the inmate claims that his or her safety or well-being would be placed in danger if it became known at the institution that the inmate was pursuing the issue, should be

withheld from logging in until answered and/or should be logged into SENTRY with sufficient vagueness as to subject code and abstract to accommodate the inmate's concerns.

A Request should be submitted and logged in at the institution where the inmate is housed at the time the inmate gives the Request to the counselor or other appropriate staff member. If the event(s) occurred at a previous institution, staff at that previous institution shall provide, promptly upon request, any investigation or other assistance needed by the institution answering the Request. If an inmate is transferred after giving the Request to a staff member, but before that Request is logged in or answered, the institution where the Request was first given to a staff member remains responsible for logging and responding to that Request.

b. **Investigation and Response Preparation**. The Clerk or Coordinator shall assign each filed Request or Appeal for investigation and response preparation. Matters in which specific staff involvement is alleged may not be investigated by either staff alleged to be involved or by staff under their supervision. Allegations of physical abuse by staff shall be referred to the Office of Internal Affairs (OIA) in accordance with procedures established for such referrals. Where appropriate; e.g., when OIA or another agency is assuming primary responsibility for investigating the allegations, the response to the Request or Appeal may be an interim response and need not be delayed pending the outcome of the other investigation.

Requests or Appeals shall be investigated thoroughly, and all relevant information developed in the investigation shall ordinarily be supported by written documents or notes of the investigator's findings. Notes should be sufficiently detailed to show the name, title, and location of the information provided, the date the information was provided, and a full description of the information provided. Such documents and notes shall be retained with the case file copy. When deemed necessary in the investigator's discretion, the investigator may request a written statement from another staff member regarding matters raised in the Request or Appeal. Requested staff shall provide such statements promptly. For a disciplinary Appeal, a complete copy of the appealed disciplinary actions record shall be maintained with the Appeal file copy.

c. **Responses**. Responses ordinarily shall be on the form designed for that purpose, and shall state the decision reached and the reasons for the decision. The first sentence or two of a response shall be a brief abstract of the inmate's Request or Appeal, from which the SENTRY abstract should be drawn. This abstract should be complete, but as brief as possible. The remainder of the response should answer completely the Request or Appeal, be accurate and factual, and contain no extraneous information. The response should be written to be released to any inmate and the general public under the Freedom of Information Act (FOIA) and the Privacy Act. Inmate names shall not be used in responses, and staff and other names may not be used unless absolutely essential.

Program Statements, Operations Memoranda, regulations, and statutes shall be referred to in responses whenever applicable, including section numbers on which the response relies.

d. **Response Time Limits**. Responses shall be made as required in Section 12 of this Program Statement.

e. **Index Completion**. When a response is completed, the Clerk shall update SENTRY in accordance with the SENTRY Administrative Remedy Manual and the instructions in

Attachment A. Particular attention should be paid to updating the status date, code, and reason, and to making any changes to the subject code and abstract indicated by the Coordinator or by the response drafter. The abstract shall be taken from the response's first paragraph. Abbreviations may be liberally used, as long as they are easily understood, to allow as complete a description of the issue in the 50 characters allotted. For consistency, the Administrative Remedy Coordinator shall approve the closing entry, including the subject codes, status code and reason, and abstract, before the closing entry is made by the Clerk.

f. **Response Distribution**. For an institution response, one copy of the complete Request and response shall be maintained in the Warden's Administrative Remedy File together with all supporting material. Three copies shall be returned to the inmate. An inmate who subsequently appeals to the regional or Central Office shall submit one copy with each appeal.

One copy of a Regional Appeal and response shall be retained at the regional office. One copy shall be sent to the Warden at the original filing location. The remaining two copies shall be returned to the inmate; one to submit in case of subsequent appeal to the Central Office, and one to retain.

One copy of a Central Office Appeal and response will be returned to the inmate. One copy will be retained in the Central Office Administrative Remedy File, one copy will be forwarded to the regional office where the Regional Appeal was answered, and one to the Warden's Administrative Remedy File at the original filing location.

g. **File Maintenance**. The Warden's Administrative Remedy File and Administrative Remedy Files at the Regional Offices and Central Office shall be maintained in a manner that assures case files are readily accessible to respond to inquiries from Federal Bureau of Prisons staff, inmates, and the public. Institutions shall file Regional and Central Office response copies with the inmate's institution submission copy. Regional offices shall file copies of Central Office responses with the inmate's Regional Appeal file. Each location shall maintain copies of supporting material and investigation notes with the case file.

When a Regional or Central Office Appeal was not preceded by a lower level filing, the institution and regional copies shall be filed at the institution and region having responsibility for the inmate at the time of response.

To provide information and feedback, Wardens and Regional Directors are encouraged to route response file copies from subsequent appeal levels to the Coordinator and the appropriate department head or person who investigated and drafted the response at their respective levels.

## 14. ACCESS TO INDEXES AND RESPONSES §542.19

**Inmates and members of the public may request access to Administrative Remedy indexes and responses, for which inmate names and Register Numbers have been removed, as indicated below. Each institution shall make available its index, and the indexes of its regional office and the Central Office. Each regional office shall make available its index, the indexes of all institutions in its region, and the index of the Central Office. The Central Office shall make available its index and the indexes of all institutions and regional offices. Responses may be requested from the location where they are maintained and must be identified by**

P1330.18    01/06/2014    **Federal Regulations from 28 CFR: this type.**  Implementing instructions: this type.    11

Attachment #3

**Remedy ID number as indicated on an index. Copies of indexes or responses may be inspected during regular office hours at the locations indicated above, or may be purchased in accordance with the regular fees established for copies furnished under the Freedom of Information Act (FOIA).**

At present, fees are detailed in 28 CFR § 16.10, which specifies a charge of $.10 per page duplicated and no charge for the first 100 pages. Staff shall forward funds received for purchase of index and response copies to the FOIA/Privacy Act Section, Office of General Counsel, Central Office.

Any location may produce its index or that of another location by making the appropriate entries on a SENTRY retrieval transaction, and specifying the "SAN" (sanitized) output format.

## 15. RECORDS MAINTENANCE AND DISPOSAL

a. **Disposal Authority**. The authority for Administrative Remedy records disposal is the "job number" NC1-129-83-07 provided by the National Archives.

b. **Administrative Remedy Indexes**. SENTRY Administrative Remedy indexes shall be maintained in computer-accessible form for 20 years, then destroyed. Pre-SENTRY indexes shall be maintained at the site of creation for 20 years, then destroyed.

c. **Administrative Remedy Case Files**. Administrative Remedy Case Files shall be destroyed three full years after the year in which the cases were completed (i.e., response completed). For cases submitted since implementation of the SENTRY module (July 1990), at the end of each calendar year (beginning at end of 1993), run SENTRY index retrieval transactions to identify the lowest case number for cases answered (status = cl* and status date in the appropriate range) during the calendar year ended three years previously. Cases below that number must be destroyed. Thus, cases answered in 1990 would be destroyed at the end of 1993; cases answered in 1991 would be destroyed at the end of 1994, etc.

To identify the lowest case number for cases answered during a given year, it may be necessary to check indexes with "Date Received" in the year in question as well as those with "Date Received" in the previous year.

Cases maintained under the pre-SENTRY numbering and filing system should be destroyed according to the following schedule:

| YEAR OF CASE # | DESTROY AT END OF |
| --- | --- |

## 16. ADMINISTRATIVE REMEDY PROCEDURES UNDER THE PRISON RAPE ELIMINATION ACT (PREA)

Title 42 U.S.C. §15607 (a) required the Attorney General to publish a final rule adopting national standards for the detection, prevention, reduction, and punishment of prison rape. Title 42 USC § 15607(b) states that the national standards shall apply immediately to the Federal Bureau of Prisons upon adoption of the final rule. The final rule is published in Title 28 C.F.R. Part 115. This section only addresses administrative remedy procedures in relation to issues of sexual

abuse, and shall not constitute the sole response of the agency to allegations of sexual abuse. Appropriate steps to address the safety and security of inmates shall be made in accordance with the other provisions of the PREA regulations, and the Program Statement **Sexually Abusive Behavior Prevention and Intervention Program**.

### §115.52 Exhaustion of administrative remedies.

### (a) An agency shall be exempt from this standard if it does not have administrative procedures to address inmate grievances regarding sexual abuse.

The Federal Bureau of Prisons has an administrative remedy system, and therefore section 115.52 (a) does not apply. The following sections, 115.52 (b) through 115.52 (g), apply to inmates seeking a formal review of issues relating to sexual abuse. For any issue not specified in sections 115.52 (b) through 115.52 (g) below, the administrative remedy system outlined in Sections 1 through 15 of this Program Statement applies.

### (b)(1) The agency shall not impose a time limit on when an inmate may submit a grievance regarding an allegation of sexual abuse.

"Sexual abuse" is defined for the purposes of this section in 28 C.F.R. § 115.6, as referenced in the Bureau's policy on Sexually Abusive Behavior Prevention and Intervention Program.

Administrative remedies regarding allegations of sexual abuse may be filed at any time. For all other issues, the 20 calendar day period specified in Section 8 of this Program Statement shall be followed. Accordingly, administrative remedies regarding an allegation of sexual abuse shall not be rejected as untimely under Section 11 of this Program Statement, above.

Once filed, the inmate should follow the time requirements for appeal, as stated in Section 9 of this Program Statement, above.

### (2) The agency may apply otherwise-applicable time limits on any portion of a grievance that does not allege an incident of sexual abuse.

If the inmate includes on a single form multiple unrelated issues, the portion of the administrative remedy regarding allegations of sexual abuse should be accepted and processed. The inmate shall be advised to use a separate form for each unrelated issue.

### (3) The agency shall not require an inmate to use any informal grievance process, or to otherwise attempt to resolve with staff, an alleged incident of sexual abuse.

Inmates are not required to attempt informal resolution under Section 7 of this Program Statement, above, regarding allegations of sexual abuse.

### (4) Nothing in this section shall restrict the agency's ability to defend against an inmate lawsuit on the ground that the applicable statute of limitations has expired.

P1330.18   01/06/2014   **Federal Regulations from 28 CFR: this type.**   Implementing instructions: this type.   13

**(c) The agency shall ensure that**

**(1) an inmate who alleges sexual abuse may submit a grievance without submitting it to a staff member who is the subject of the complaint, and**

**(2) such grievance is not referred to a staff member who is the subject of the complaint.**

Matters in which specific staff involvement is alleged may not be investigated by either staff alleged to be involved or by staff under their supervision. Allegations of physical abuse by staff shall be referred to the Office of Internal Affairs (OIA) in accordance with procedures established for such referrals. Where appropriate, e.g., when OIA or another agency is assuming primary responsibility for investigating the allegations, the response to the Request or Appeal may be an interim response and need not be delayed pending the outcome of the other investigation.

**(d)(1) The agency shall issue a final agency decision on the merits of any portion of a grievance alleging sexual abuse within 90 days of the initial filing of the grievance.**

**(2) Computation of the 90-day time period shall not include time consumed by inmates during the course of an administrative appeal.**

**(3) The agency may claim an extension of time to respond, of up to 70 days, if the normal time period for response is insufficient to make an appropriate decision. The agency shall notify the inmate in writing of any such extension and provide a date by which a decision will be made.**

**(4) At any level of the administrative process, including the final level, if the inmate does not receive a response within the time allotted for reply, including any properly-noticed extension, the inmate may consider the absence of a response to be a denial at that level.**

Time frames in this section are consistent with Section 12 of this Program Statement, above.

**(e)(1) Third parties, including fellow inmates, staff members, family members, attorneys, and outside advocates, shall be permitted to assist inmates in filing requests for administrative remedies relating to allegations of sexual abuse, and shall also be permitted to file such requests on behalf of inmates.**

**(2) If a third party files such a request on behalf of an inmate, the facility may require as a condition of processing the request that the alleged victim agree to have the request filed on his or her behalf, and may also require the alleged victim to personally pursue any subsequent steps in the administrative remedy process.**

**(3) If the inmate declines to have the request processed on his or her behalf, the agency shall document the inmate's decision.**

This section is applicable only to allegations of sexual abuse; inmates must personally file administrative remedies relating to other issues.

The inmate's approval of the remedy filed on his or her behalf shall be documented, and include the inmate's signature. An inmate's decision to decline to have the remedy processed on his or her behalf should also be documented, and include the inmate's signature. The documentation should be retained in the agency Administrative Remedy File at the appropriate level and on Sentry in accordance with Section 13 of this Program Statement.

Responses to third party remedies should be provided to the inmate who is the subject of the remedy.

An inmate is required to personally file any subsequent appeal. However, the inmate may receive assistance in preparing the appeal in accordance with Section 10 of this Program Statement, above.

**(f)(1) The agency shall establish procedures for the filing of an emergency grievance where an inmate is subject to a substantial risk of imminent sexual abuse.**

This section applies when an administrative remedy alleges a substantial risk of imminent sexual abuse. If a remedy meets both of these criteria, the remedy will receive expedited processing, as described below.

Section 12 of this Program Statement provides for an "emergency" administrative remedy as required by section 115.52(f). An expedited BP-9 (BP-229) response shall be provided if a remedy is determined to be of an emergency nature which threatens the inmate's immediate health or welfare. *See* 28 C.F.R. § 542.18.

The inmate shall clearly mark "Emergency" on the BP-9 (BP-229), and explain, in writing, the reason for filing as an emergency administrative remedy under this section.

If an inmate files an emergency administrative remedy with the Warden, the local Administrative Remedy Coordinator shall make a determination as to whether the remedy alleges a substantial risk of imminent sexual abuse. If the local Administrative Remedy Coordinator agrees that the administrative remedy meets the criteria for an emergency administrative remedy, the request shall be accepted, and receive expedited processing as stated below.

If the remedy is rejected for failing to meet the criteria of an emergency grievance under this section, a rejection notice will be provided to the inmate, and the remedy will be processed in accordance with the usual time frames indicated above.

**(2) After receiving an emergency grievance alleging an inmate is subject to a substantial risk of imminent sexual abuse, the agency shall immediately forward the grievance (or any portion thereof that alleges the substantial risk of imminent sexual abuse) to a level of review at which immediate corrective action may be taken, shall provide an initial response within 48 hours, and shall issue a final agency decision within five calendar days. The initial response and final agency decision shall document the agency's determination whether the inmate is in**

**substantial risk of imminent sexual abuse and the action taken in response to the emergency grievance.**

If an inmate files the emergency grievance with the institution under Section 12 of this Program Statement, above, alleging a substantial risk of imminent sexual abuse, an expedited BP-9 (BP-229) response shall be provided within 48 hours. Best efforts to provide BP-10 (BP-230) and BP-11 (BP-231) responses within five calendar days should also be made in accordance with the provisions on exhaustion referenced above. If the inmate does not receive a response within the time allotted for reply, the inmate may consider the absence of a response to be a denial at that level.

Inmates may also file "sensitive" administrative remedies under Section 8 of this Program Statement, above, regarding allegations of sexual abuse. If an inmate reasonably believes the issue is sensitive and the inmate's safety or well-being would be placed in danger if the remedy became known at the institution, the inmate may submit the remedy directly to the appropriate Regional Director. *See* 28 C.F.R. § 542.14 (d) (1). "Sensitive" grievances should be processed in accordance with Section 8 and Section 11 of this Program Statement, and the expedited response times specified in this section do not apply.

**(g)  The agency may discipline an inmate for filing a grievance related to alleged sexual abuse only where the agency demonstrates that the inmate filed the grievance in bad faith.**

The maintenance of an effective sexual abuse prevention policy, and general secure and orderly running of an institution, requires that inmates be held responsible for manipulative behavior and false allegations. Allegations of false reports will be considered by staff in accordance with the procedures and standards of the Inmate Discipline Program policy.

## 17.  INSTITUTION SUPPLEMENT

Each Warden shall forward a copy of any Institution Supplement developed to implement this Program Statement to the Regional Administrative Remedy Coordinator and to the National Inmate Appeals Administrator in the Central Office.

*Records Retention Requirements*

Requirements and retention guidance for records and information applicable to this program are available in the Records and Information Disposition Schedule (RIDS) on Sallyport.

# ATTACHMENT 2

Attachment #3



**U.S. Department of Justice**
Federal Bureau of Prisons

P R O G R A M   S T A T E M E N T

OPI           OGC/LIT
NUMBER        1320.07
DATE          August 1, 2024

# Federal Tort Claims Act

*/s/*
*Approved*: Colette S. Peters
Director, Federal Bureau of Prisons

1. **§ 543.30  Purpose and scope.**

Pursuant to the Federal Tort Claims Act, a claim for money damages for personal injury or death and/or damage to or loss of property must be filed against the United States by the injured party with the appropriate Federal agency for administrative action. General provisions for processing administrative claims under the Federal Tort Claims Act are contained in 28 CFR part 14. The provisions in this subpart describe the procedures to follow when filing an administrative tort claim with the Bureau of Prisons.

Under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346(b) and 28 U.S.C. § § 2671-2680, the Government may be liable for the negligent or wrongful acts or omissions of its employees while acting within the scope of their employment.

Inmate work-related claims are not compensable under the FTCA's provisions. Such claims should be processed under the Inmate Accident Compensation Act, 28 C.F.R. §§ 301.301 to .318.

Most Federal employee work-related claims are also not paid under the FTCA's provisions. Work-related personal injury or death claims are processed under the Federal Employees' Compensation Act (FECA), 5 U.S.C. §§ 8101 – 8193. Please see Program Statement, **Workers' Compensation Program** for more information. Work-related personal property claims are processed under 31 U.S.C. § 3721, commonly known as The Military Personnel and Civilian Employees Claims Act (CECA), or under 31 U.S.C. § 3722, commonly known as the Bureau of Prisons Claims Act (BOPCA), unless the claim involves government negligence. For more information, please reference the Program Statement, **Staff Personal Property Claims**.

a.  **Summary of Changes**

*Policy Rescinded*

P1320.06        Federal Tort Claims Act (8/1/2003)

- ■ Provides more details regarding the delegation of authority to settle administrative tort claims.
- ■ Adds guidance claims regarding inmates' privately owned property will be considered for settlement under 31 U.S.C. § 3723.
- ■ Provides guidance the Bureau may reject a claim only if a claimant or representative fails to sign the administrative claim or fails to provide a sum certain for damages.
- ■ Specifies the Associate General Counsel, Litigation Branch, will investigate and propose settlement of Central Office tort claims within the delegated authority.
- ■ Removes the reference to the depreciation guidelines because inmate property claims will be processed under 31 U.S.C. § 3723.
- ■ Adds guidance regarding what denial letters should include and how they should be sent.
- ■ Adds guidance regarding the process of requesting settlement authority and approving administrative tort claim settlements.
- ■ For the purposes of this Program Statement, the term "employee" is used in black implementing text and is intended to have the same meaning as the term "staff" used in blue regulatory text. The terms "staff" and "staff member (s)" have been replaced with the term "employee (s)" throughout the black implementing text.

b.  **Program Objective.**  The expected result of this program is:

Appropriate compensation will be made under the FTCA if individuals suffer proven monetary loss, personal injury, or wrongful death caused by an employee's negligent or wrongful act or omission, while the employee is acting within the scope of their employment.

c.  **Institution Supplement.**  Required.  Each institution will develop an Institution Supplement detailing procedures for conducting investigations under Section 4.c.

2.  **DELEGATION OF AUTHORITY**

The Director of the Federal Bureau of Prisons (Bureau) is authorized to settle administrative tort claims that do not exceed $50,000 under 28 C.F.R. § 0.172. The Director has redelegated this authority to the General Counsel under 28 C.F.R. § 0.96 and 0.97, who has redelegated the authority to the Regional Counsels and the Associate General Counsel, Litigation Branch.

P1320.07    8/1/2024    Federal Regulations from 28 CFR: this type.   Implementing instructions: this type                2

24

3. **§ 543.31  Presenting a claim.**

(a) ***Claimant.*** You may file a claim if you are the injured person or the owner of the damaged or lost property. A person acting on your behalf as an agent, executor, administrator, parent, guardian, or other representative may file a claim for you if the person provides a written statement signed by you giving that person permission to act for you. A representative may also file a claim for wrongful death. If you hire a lawyer or authorize a representative to act on your behalf, the agency will correspond only with that representative, and will not continue to correspond with you.

A claim may be filed by any individual (e.g., inmate, employee, visitor, or private citizen). You must file a claim within two years after your claim arises under 28 U.S.C. § 2401(b). Should a settlement offer be made, the voucher will contain both your name and the name of your representative, if applicable.

Regional Counsel employees track all claims that are filed properly within their regions.

Claims are closed after they are either settled, denied, rejected, or transferred to another agency pursuant to 28 C.F.R. § 14.2.

Claims for damage to, or loss of, an inmate's privately owned property is considered for settlement under 31 U.S.C. § 3723. Please see Program Statement, **Inmate Property Claims** for more information.

(b) ***Claim form.*** You may obtain a form from staff in the Central Office, Regional Offices, Bureau institutions, or staff training centers.

Employees will provide a SF-95, Claim for Damage, Injury, or Death form, which is available on the public U.S. General Services Administration (GSA) website in the GSA Forms Library and on the Employee Resources page of the Bureau intranet.

A claim may be filed without a SF-95, Claim for Damage, Injury, or Death form. However, the claimant should provide all the following information:

- date of incident
- place where the incident occurred
- explanation of events
- names of witnesses
- description of injury or property loss
- date of claim

- sum certain claimed (required)
- claimant's signature (required)

Inmates should obtain forms from employees at the institution where they are incarcerated.

(c) ***Presenting a claim.*** You may either mail or deliver the claim to the regional office in the region where the loss or injury occurred. If the loss or injury occurred in the Central Office, you may either mail or deliver the claim to the Office of General Counsel, Central Office. A list of addresses for all the Bureau institutions and offices can be found at *www.bop.gov.*

Institution employees will not accept claims submitted at institutions but will transfer the claims to the correct Regional Office or the Central Office, depending on where the loss or injury occurred.

If a claim is submitted to the Bureau in error, employees will forward it to the proper agency or return it to the claimant if the agency cannot be identified. Please note, the term "agency" includes executive departments, judicial and legislative branches, military departments, and independent establishments of the United States.

Claims that are transferred to another agency will not be accepted or denied by the Bureau.

4.  **§ 543.32 Processing the claim.**

(a) ***Receipt of acknowledgment letters.*** If you have presented a claim signed by you or a duly authorized agent or legal representative that provides all the necessary information (such as time, date, and place where the incident occurred, and a specific sum of money you are requesting as damages), you will receive an acknowledgment letter indicating the presentment date and a claim number. If your submission is unsigned, or signed by a person without legal authority to present the claim on your behalf, or you fail to provide all necessary information, your submission will be rejected and returned to you for resubmission. The presentment date is the date your submission containing all required signatures and necessary information is first received by either the Department of Justice or an office of the Bureau of Prisons. You should refer to your claim number in all further correspondence with the agency. Additionally, you must inform the agency of any changes in your address.

An inmate must inform the Bureau office that is processing their claim when they are transferred to another institution or released from custody.

Regional Counsel and Office of General Counsel employees will date-stamp all claims on the date they are received whether or not the claims are received in the proper office.

P1320.07    8/1/2024    Federal Regulations from 28 CFR: this type.    Implementing instructions: this type                4

26

A claim that is transferred to another Bureau office will be considered filed with that office when the claim was received by the first appropriate agency office.

For example, if a claim is received by the Department of Energy on October 12, then transferred to the Department of Justice on October 19, then transferred to the Central Office, Bureau of Prisons, on October 24, then transferred to a regional office on November 1, the proper date the claim is received would be October 19.

The Bureau may reject or not accept a claim only if a claimant or representative (1) fails to sign the administrative claim, or (2) fails to provide a sum certain for damages. Claims that are unclear, illegible, or lack allegations of federal involvement should be denied instead of rejected.

(b) *Transfer of claims.* If your claim is improperly submitted to the wrong office or agency, you will be notified by the responsible office that your claim was transferred to another regional office, the Central Office, or another agency.

(c) *Investigation.* The regional office ordinarily refers the claim to the appropriate institution or office for investigation. You may also be required to provide additional information during the investigation. Your failure to respond within a reasonable time may result in the denial of the claim.

(1) **Institution Investigation.** Claims properly filed with a regional office will be referred to the appropriate institution or office for investigation. The Warden at the institution will designate employees to investigate and prepare a report on the claim. The report, with the Warden's recommendation(s), is then forwarded to the appropriate Regional Counsel. The Regional Counsel's Office will track all outstanding claims until settled or denied.

Each institution will develop an Institution Supplement detailing procedures for such investigations.

The Safety Department conducts a timely investigation of motor vehicle accidents. This investigation includes documenting the condition of the site at the time of the accident and taking photographs that depict the damage accurately.

(2) **Investigation Report.** The report will include:

- the Claim for Damage, Injury, or Death Form or other appropriate written form of notification
- background materials, including statements of witnesses, photographs, and medical case descriptions, as necessary

- ■  relevant administrative remedy requests
- ■  the Warden's conclusions and recommendations

A sufficient number of detailed photographs must be taken to provide the reviewing offices with a clear idea of the type and extent of damage, especially in the case of motor vehicle damage.

(3)  **Central Office Claims.** Central Office employees will investigate claims filed properly in the Central Office and provide a report to the Office of General Counsel. The Office of General Counsel will track all outstanding claims in the Central Office until a claim is settled or denied.

(4)  **Medical Malpractice Claims.** Institution Health Services employees should review claims alleging medical malpractice or improper medical care. After this review, a clear case description must be provided, including a history of all relevant medical treatment, medications, and services rendered to the claimant. A case description should also include any relevant medical justifications for the treatment rendered.

(5)  **Witness Security (WITSEC) Claims.** Claims filed by inmates in the WITSEC Program must be handled in the same manner as other claims, except all correspondence and the resulting investigation must be sent through the Inmate Monitoring Section, Correctional Programs Division, Central Office.

(d) *Administrative claim decisionmaker.* The Regional Counsel or his or her designee reviews the investigation and the supporting evidence and renders a decision on all claims properly presented to the regional office and within regional settlement authority. The Regional Counsel has limited settlement authority (up to an amount established by the Director of the Bureau of Prisons). After considering the merits of the claim, the Regional Counsel may deny or propose a settlement of the claim. The Associate General Counsel, Litigation Branch, will investigate and propose settlement for all claims properly presented in the Central Office in accordance with delegated settlement authority. If the proposed settlement exceeds the Bureau of Prisons' authority, the General Counsel will seek approval from the appropriate Department of Justice officers.

(e) *Central Office review.* If the Regional Counsel recommends a proposed settlement in excess of the settlement authority, the claim will be forwarded, with a recommendation, to the Office of General Counsel, Central Office for their review.

If the Regional Counsel or the Associate General Counsel, Litigation Branch, review a claim and determine that a settlement is in the best interest of the Government, a settlement offer may be made to the claimant.

P1320.07    8/1/2024    Federal Regulations from 28 CFR: this type.   Implementing instructions: this type                    6

28

Attachment #3

The Regional Counsel and the Associate General Counsel, Litigation Branch, have settlement authority up to $50,000, except for claims involving a significant event. If a settlement agreement will likely exceed $50,000, Counsel must request settlement authority from the General Counsel before negotiating a settlement amount. Counsel is to provide the Office of General Counsel with the complete investigation report, copies of all supporting materials, and a detailed memorandum requesting settlement authority.

If a settlement agreement is then reached that exceeds $50,000, the General Counsel must submit the agreement to the Torts Branch, Civil Division, U.S. Department of Justice, for final approval. The Torts Branch will not consider requests for settlement authority without a final settlement agreement signed by the claimant and claimant's attorney if claimant is represented.

Settlement of claims over $2,500 will be forwarded to the Judgment Fund Branch, Bureau of the Fiscal Service, U.S. Department of the Treasury, for payment.

Payment of claims for $2,500 or less will be paid from institution funds of the institution where the claim arose.

(f) ***Options if claim is denied or settlement offer is unsatisfactory.*** If your claim is denied or you are dissatisfied with a settlement offer, you may request in writing that the Bureau of Prisons reconsider your claim in the administrative stage. You should include additional evidence of injury or loss to support your request for reconsideration. If you are dissatisfied with the final agency action, you may file suit in an appropriate United States District Court, as no further administrative action is available.

All denial letters must be sent via certified or registered mail. The denial letter must state that if the claimant is dissatisfied with the denial, they may file suit in the appropriate District Court within six months after the mailing of the denial.

(g) ***Acceptance of settlement.*** If you accept a settlement, you give up your right to bring a lawsuit against the United States or against any employee of the government whose action or lack of action gave rise to your claim.

(h) ***Response timeline.*** Generally, you will receive a decision regarding your claim within six months of when you properly present the claim. If you have not received a letter either proposing a settlement or denying your claim within six months after the date your claim was presented, you may assume the claim is denied. You may then proceed to file a lawsuit in the appropriate United States District Court.

# ATTACHMENT 3

Attachment #3

```
 GUADK           *          PUBLIC INFORMATION        *        04-08-2025
PAGE 001         *             INMATE DATA            *        07:56:40
                            AS OF 04-08-2025


REGNO..: 63470-298 NAME: SANCHEZ-GONZALEZ, HUGO ALFONSO


                    RESP OF: GUA
                    PHONE..: 787-749-4480    FAX: 787-775-7824
                                             RACE/SEX...: WHITE / MALE
                                             AGE:  35
PROJ REL MT: GOOD CONDUCT TIME RELEASE       PAR ELIG DT: N/A
PROJ REL DT: 07-20-2026                      PAR HEAR DT:
```

```
G0002       MORE PAGES TO FOLLOW . . .
```

```
  GUADK          *          PUBLIC INFORMATION          *          04-08-2025
PAGE 002         *            INMATE DATA               *          07:56:40
                         AS OF 04-08-2025


REGNO..: 63470-298 NAME: SANCHEZ-GONZALEZ, HUGO ALFONSO


                    RESP OF: GUA
                    PHONE..: 787-749-4480    FAX: 787-775-7824
FSA ELIGIBILITY STATUS IS: INELIGIBLE


THE FOLLOWING SENTENCE DATA IS FOR THE INMATE'S CURRENT COMMITMENT.


HOME DETENTION ELIGIBILITY DATE....: 01-20-2026


THE INMATE IS PROJECTED FOR RELEASE: 07-20-2026 VIA GCT REL


---------------------CURRENT JUDGMENT/WARRANT NO: 010 ----------------------


COURT OF JURISDICTION..........: CALIFORNIA, SOUTHERN DISTRICT
DOCKET NUMBER..................: 17CR2201-CAB
JUDGE..........................: BENCIVENGO
DATE SENTENCED/PROBATION IMPOSED: 11-14-2018
DATE COMMITTED.................: 11-29-2018
HOW COMMITTED.................: US DISTRICT COURT COMMITMENT
PROBATION IMPOSED.............: NO


                FELONY ASSESS  MISDMNR ASSESS  FINES        COSTS
NON-COMMITTED.:  $100.00        $00.00         $00.00       $00.00

RESTITUTION...:  PROPERTY:  NO  SERVICES:  NO     AMOUNT:  $00.00


-----------------------CURRENT OBLIGATION NO: 010 --------------------------
OFFENSE CODE....:  391     21:846 SEC 841-851 ATTEMPT
OFF/CHG: 21:841(A)(1) AND 846 CONSPIRACY TO DISTRIBUTE METHAMPHETAMINE

 SENTENCE PROCEDURE.............: 3559 PLRA SENTENCE
 SENTENCE IMPOSED/TIME TO SERVE.:   120 MONTHS
 TERM OF SUPERVISION............:     5 YEARS
 DATE OF OFFENSE................: 05-29-2017




G0002      MORE PAGES TO FOLLOW . . .
```

```
  GUADK            *      PUBLIC INFORMATION        *      04-08-2025
PAGE 003 OF 003 *          INMATE DATA              *      07:56:40
                         AS OF 04-08-2025


REGNO..: 63470-298 NAME: SANCHEZ-GONZALEZ, HUGO ALFONSO


                       RESP OF: GUA
                       PHONE..: 787-749-4480   FAX: 787-775-7824
-----------------------CURRENT COMPUTATION NO: 010 -------------------------


COMPUTATION 010 WAS LAST UPDATED ON 08-02-2021 AT DSC AUTOMATICALLY
COMPUTATION CERTIFIED ON 12-10-2018 BY DESIG/SENTENCE COMPUTATION CTR

THE FOLLOWING JUDGMENTS, WARRANTS AND OBLIGATIONS ARE INCLUDED IN
CURRENT COMPUTATION 010: 010 010


DATE COMPUTATION BEGAN..........: 11-14-2018
TOTAL TERM IN EFFECT............:   120 MONTHS
TOTAL TERM IN EFFECT CONVERTED..:    10 YEARS
EARLIEST DATE OF OFFENSE........: 05-29-2017


JAIL CREDIT.....................:   FROM DATE     THRU DATE
                                    08-07-2017    11-13-2018


TOTAL PRIOR CREDIT TIME.........: 464
TOTAL INOPERATIVE TIME..........: 0
TOTAL GCT EARNED AND PROJECTED..: 383
TOTAL GCT EARNED................: 221
STATUTORY RELEASE DATE PROJECTED: 07-20-2026
ELDERLY OFFENDER TWO THIRDS DATE: 04-07-2024
EXPIRATION FULL TERM DATE.......: 08-07-2027
TIME SERVED.....................:     7 YEARS      8 MONTHS     2 DAYS
PERCENTAGE OF FULL TERM SERVED..:  76.7
PERCENT OF STATUTORY TERM SERVED:  85.6


PROJECTED SATISFACTION DATE.....: 07-20-2026
PROJECTED SATISFACTION METHOD...: GCT REL




G0000       TRANSACTION SUCCESSFULLY COMPLETED
```

34

**ATTACHMENT 4**

```
 GUADK              *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL *        05-15-2025
PAGE 001 OF                                                               09:02:25
      FUNCTION: L-P SCOPE: REG   EQ 63470-298    OUTPUT FORMAT: _____FULL
-------LIMITED TO SUBMISSIONS WHICH MATCH ALL LIMITATIONS KEYED BELOW---------
DT RCV: FROM _____ THRU _____  DT STS: FROM _____ THRU _____
DT STS: FROM ___ TO ___ DAYS BEFORE "OR" FROM ___ TO ___ DAYS AFTER DT RDU
DT TDU: FROM ___ TO ___ DAYS BEFORE "OR" FROM ___ TO ___ DAYS AFTER DT TRT
STS/REAS: _____ _____ _____ _____ _____ _____ _____ _____ _____ _____
SUBJECTS: ____ ____ ____ ____ ____ ____ ____ ____ ____ ____
EXTENDED: _ REMEDY LEVEL: _ _            RECEIPT: _ _ _ "OR" EXTENSION: _ _ _
RCV  OFC : EQ ____      ____      ____      ____      ____      ____
TRACK:  DEPT: _____ _____ _____ _____ _____ _____
       PERSON: ___      ____      ____      ____      ____      ____
         TYPE: ___      ____      ____      ____      ____      ____
EVNT FACL: EQ ____      ____      ____      ____      ____      ____
RCV FACL.: EQ ____      ____      ____      ____      ____      ____
RCV UN/LC: EQ _____ _____ _____ _____ _____ _____
RCV QTR..: EQ _____ _____ _____ _____ _____ _____
ORIG FACL: EQ ____      ____      ____      ____      ____      ____
ORG UN/LC: EQ _____ _____ _____ _____ _____ _____
ORIG QTR.: EQ _____ _____ _____ _____ _____ _____




G0002      MORE PAGES TO FOLLOW . . .
```

```
GUADK           *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL *      05-15-2025
PAGE 002 OF       *            FULL SCREEN FORMAT             *      09:02:25


REGNO: 63470-298 NAME: SANCHEZ-GONZALEZ, HUGO
RSP OF...: GUA UNT/LOC/DST: 1 CADRE M           QTR.: A10-130L   RCV OFC: GUA
REMEDY ID: 1204843-F1     SUB1: 13LM SUB2:      DATE RCV:   07-08-2024
UNT  RCV..:1 CADRE M     QTR RCV.: A10-130U     FACL RCV: GUA
UNT  ORG..:1 CADRE M     QTR ORG.: A10-130U     FACL ORG: GUA
EVT FACL.: GUA    ACC LEV:  GUA  1                   RESP DUE:  SAT  08-17-2024
ABSTRACT.: I/M REQUESTING COMPASSIONATE RELEASE.
STATUS DT: 08-12-2024  STATUS CODE: CLD STATUS REASON: DNY
INCRPTNO.:           RCT: P EXT: P DATE ENTD: 07-08-2024
REMARKS..:



               CURRENT INVESTIGATIVE AND RELIEF TRACKING DATA
DATE DUE          DEPARTMENT   TO    DATE ASSN    TRK TYPE    DATE RETURNED
MON 07-15-2024    CORR PGM     JM    07-08-2024     INV         08-12-2024




REGNO: 63470-298 NAME: SANCHEZ-GONZALEZ, HUGO
RSP OF...: GUA UNT/LOC/DST: 1 CADRE M           QTR.: A10-130L   RCV OFC: GUA
REMEDY ID: 1209958-F1     SUB1: 38DM SUB2:      DATE RCV:   08-21-2024
UNT  RCV..:1 CADRE M     QTR RCV.: A10-130U     FACL RCV: GUA
UNT  ORG..:1 CADRE M     QTR ORG.: A10-130U     FACL ORG: GUA
EVT FACL.: GUA    ACC LEV:  GUA  1 SER  1            RESP DUE:  TUE  09-10-2024
ABSTRACT.: I/M REQUESTING FSA CREDITS BE APPLIED.
STATUS DT: 08-26-2024  STATUS CODE: CLD STATUS REASON: DNY
INCRPTNO.:           RCT: P EXT:   DATE ENTD: 08-21-2024
REMARKS..:



               CURRENT INVESTIGATIVE AND RELIEF TRACKING DATA
DATE DUE          DEPARTMENT   TO    DATE ASSN    TRK TYPE    DATE RETURNED
WED 08-28-2024    CORR PGM     JM    08-21-2024     INV         08-26-2024







G0002       MORE PAGES TO FOLLOW . . .
```

```
GUADK          *ADMINISTRATIVE REMEDY GENERALIZED RETRIEVAL *     05-15-2025
PAGE 003 OF 003 *            FULL SCREEN FORMAT             *     09:02:25


REGNO: 63470-298 NAME: SANCHEZ-GONZALEZ, HUGO
RSP OF...: GUA UNT/LOC/DST: 1 CADRE M        QTR.: A10-130L   RCV OFC: SER
REMEDY ID: 1209958-R1     SUB1: 38DM SUB2:      DATE RCV:   09-19-2024
UNT  RCV..:1 CADRE M    QTR RCV.: A10-130U     FACL RCV: GUA
UNT  ORG..:1 CADRE M    QTR ORG.: A10-130U     FACL ORG: GUA
EVT FACL.: GUA    ACC LEV:  GUA  1 SER  1         RESP DUE:  SAT  10-19-2024
ABSTRACT.: I/M REQUESTING FSA CREDITS BE APPLIED.
STATUS DT: 05-13-2025  STATUS CODE: CLD STATUS REASON: DNY
INCRPTNO.:          RCT: P EXT:   DATE ENTD: 01-16-2025
REMARKS..: AMENDED CORRECTION DUE TO INMATE SUBJECT TO A FINAL
          ORDER OF REMOVAL.




                3 REMEDY SUBMISSION(S) SELECTED
G0000         TRANSACTION SUCCESSFULLY COMPLETED
```

# ATTACHMENT 5

**U.S. DEPARTMENT OF JUSTICE**

Federal Bureau of Prisons

**REQUEST FOR ADMINISTRATIVE REMEDY**

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: Sanchez, Hugo A.          63470-298          1C Cadre          MDC Guaynabo

LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.          UNIT          INSTITUTION

### Part A- INMATE REQUEST

Through this means I am requesting your help to solve my problem regarding my FSA Time Credits. I had earned 365 days in FTCs applied towards my early release but they were suddenly removed due to a letter from DHS. This letter is an Immigration Detainer not a final order of removal, however my FSA Time Credits were still removed. According to § 3632 (d)(4) a detainer is not a criteria for FTCs to be used for early release, it was once before but it was updated and striked out, making me eligible. This form also is from September- 4, 2019 and since that date I have been earning my FTCs and applying them for my early release as shown on various documents given to me by BOP stating my eligibility, my projected release method and projected release date with FSA.

Please help me fixing this problem and reapplying my past earned FTCs for my release. Thank you

07-29-24

DATE

Sanchez Hugo

SIGNATURE OF REQUESTER

### Part B- RESPONSE

_____ DATE _____          _____ WARDEN OR REGIONAL DIRECTOR _____

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

**ORIGINAL: RETURN TO INMATE**          CASE NUMBER: 1209958-F1

### Part C- RECEIPT

CASE NUMBER: 1209958-F1

Return to: _____

LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.          UNIT          INSTITUTION

SUBJECT: _____

_____ DATE _____          RECIPIENT'S SIGNATURE (STAFF MEMBER)

FPI-PEPR          ♻ PRINTED ON RECYCLED PAPER          BP-229(13)
APRIL 1982

**REQUEST FOR ADMINISTRATIVE REMEDY**
Sanchez-Gonzalez, Hugo
Register Number: 63470-298
Unit: 1C
Remedy ID No. 1209958-F1

---

### B-Response

This is in response to your Administrative Remedy request dated July 29, 2024, regarding the removal of First Step Act credits. In your request to staff you asked that the credits be returned to your sentence calculation.

A review of this matter reveals the following regarding your request. Your First Step Act eligibility was reviewed, and it was determined that you are eligible for First Step Act as your offense is not listed as excludable. We received an Immigration Detainer-Notice of Action, dated September 4, 2019, that states that there is a current, final order of removal against you. The Program Statement 5410.01 CN-2 First Step Act of 2018-Time credits: Procedures for Implementation of 18 U.S.C. 3632(d)(4) on section 10 Application of FTC's enumerates the criteria for credits to be applied towards early release.

"For inmates who meet the following criteria, up to 365 days of earned FTCs will be automatically applied to early release:
■ Has a term of supervised release to follow the term of incarceration.
■ Has a low or minimum PATTERN risk level.
■ Has maintained a low or minimum PATTERN risk level for at least two consecutive. assessments conducted during regularly scheduled Program Reviews.
■ Is not the subject of a final order of removal under immigration laws, and
■ Has not opted out or refused to participate in any required program, and therefore, is in earning status."

In your case, you do have a final order of removal therefore, although you are eligible to First Step Act you are not eligible for credits to be applied towards your early release to supervision.

Based on the above information, your request for Administrative Remedy is denied as you are subject to a final order of removal by Immigration and Customs Enforcement. In the event you are not satisfied with this response, you may appeal within 20 calendar days from the date of this response. Your appeal should be submitted to the Regional Director, Southwest Regional Office, 3800 Camp Creek Parkway SW, Building 2000, Atlanta, GA 30331-6226.

Angel L. Adán, Warden                    8/26/24
                                          Date

# ATTACHMENT 6

Regional Administrative Remedy Appeal No. 1209958-R1
Part B – Amended Response

This is an amendment of our previous response, dated April 10, 2025, to correct our explanation of the impact of your ICE detainer on your ability to apply First Step Act earned time credits (FTCs). This response does not extend your timeline to appeal the original response as indicated in Program Statement 1330.18, Administrative Remedy Program.

Pursuant to Program Statement 5410.01, First Step Act of 2018 – Time Credits: Procedures for Implementation of 18 U.S.C. § 3632(d)(4), "For any inmate eligible to earn FSA Time Credits . . . who is subject to a final order of removal under immigration laws as defined in 8 U.S.C. 1101(a)(17) (see 18 U.S.C. 3632(d)(4)(E)), the Bureau may not apply FSA Time Credits toward prerelease custody or early transfer to supervised release."

The Federal Bureau of Prisons (BOP) received from the U.S. Department of Homeland Security an Immigration Detainer – Notice of Action dated September 5, 2019, which states that there is a final order of removal against you. Accordingly, by law the BOP may not apply any FTCs you have earned toward either prerelease custody or early transfer to supervised release.

Accordingly, your Regional Administrative Remedy Appeal is denied. If dissatisfied with this response, you may appeal to the Office of General Counsel, Bureau of Prisons, 320 First Street, NW, Washington, D.C. 20534. Your appeal must be received in the Office of the General Counsel within 30 calendar days of the date of our previous response.

_____5/12/25_____          _____
Date                                          Regional Director, SERO

# ATTACHMENT 7

Attachment #3

Welcome LIVANIS PEREZ RIVERA  | **Logout**



HOME   ALERTS   MY WORK   NEW CASE   SEARCH MAIN   EMAIL

## CASE SEARCH

Search    Reset

**Case Login Information**

Case ID

Inmate Reg No.

Short Description

Classification          Any

Case Type               Any

Case Sub-Type           Any

Current Region          Any

Current Institution     Any

Incident Region         Any

Incident Institution    Any

Monetary Relief Sought

Estimated Amount

**LawPack Only?**

Responsible Legal Office  Any

**Case Resolution**

Resolution Type        Any

Resolution Reason      Any

Resolution Sought

Total Amount Paid

Resolution Description

Pro Se ?               Any

**Person Involved**

Type

Last Name              Sanchez-Gonzalez

First Name             Hugo

Inmate Reg No.         63470-298

**Case Progress**

Case Status

Timeline Status

Case Owner

**Search Criteria**

Dates                                                    to

                                                         to

Long Description

Further Case Classification

Comments

◉ ALL of these conditions   ○ ANY of these conditions

Search    Reset

Home   |   Alerts   |   My Work   |   New Case   |   Search Main   |   Email

United States Department of Justice - Office of General Counsel & Review

