IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

HUGO ALFONSO SÁNCHEZ-GONZÁLEZ,

**Plaintiff,**

v.

WARDEN MDC GUAYNABO,

**Defendant.**

**Civil No.** 25-1035 (FAB)

### OPINION AND ORDER

BESOSA, Senior District Judge.

Before the Court is defendant Warden MDC Guaynabo (the "warden")'s motion to dismiss the complaint. (Docket No. 31.) For the following reasons, the warden's motion to dismiss is **DENIED**.

**I.   Background**

Plaintiff Hugo Alfonso Sánchez-González ("Sánchez") is a Mexican national. (Docket No. 13 at p. 2.) On November 14, 2018, he was sentenced to 120 months of imprisonment after being convicted of conspiracy to distribute 50 grams or more of methamphetamine. See id.; Docket No. 31 at p. 2. He is currently serving his sentence at the Metropolitan Detention Center in Guaynabo, Puerto Rico. Id. While incarcerated, he earned good-time credits totaling 365 days under the First Step Act ("FSA"). See Docket No. 13 at p. 2; 18 U.S.C. § 3632(d)(4). Application of the FSA credits advanced his release date from July 20, 2026 to

Civil No. 25-1035 (FAB)                                                  2

July 20, 2025.  (Docket No. 13 at pp. 2-4.)  Before his release date arrived, however, the Bureau of Prisons ("BOP") informed him that he was deemed ineligible for FSA credits.  Id.  The BOP's reversal on his FSA eligibility was based on its assertion that he was subject to a final order of removal (i.e., deportation).  See id.; Docket No. 1-2 at p. 1; 18 U.S.C. § 3632(d)(4)(E)(i) ("A prisoner is ineligible to apply time credits [] if the prisoner is the subject of a final order of removal[.]")

Sánchez challenged the BOP's finding that he was not eligible for FSA credits.  He attempted to resolve the issue informally with the warden in early July 2024.  See Docket No. 1-2 at pp. 4-9; Docket No. 31-3 at p. 9 (detailing informal resolution procedures as part of the BOP's administrative remedy program).  On July 25, 2024, after his informal resolution efforts were rebuffed, he submitted a formal request to the BOP to reinstate his FSA credits.  See Docket No. 31-3 at p. 39 (plaintiff's request), pp. 9-11 (outlining administrative remedy procedure).  His request was denied on August 26, 2024.  Id. at p. 40.  He appealed the denial on September 19, 2024.  See Docket No. 1-3 (appeal); Docket No. 31-3 at pp. 11-12 (outlining administrative remedy procedure).  On January 21, 2025, after waiting over four months without a response, he filed the current complaint pro se.  (Docket No. 1.)  The complaint requests habeas corpus relief pursuant to 28 U.S.C.

Civil No. 25-1035 (FAB)                                                    3

§ 2241, arguing that the BOP erred in calculating his release date by wrongly taking away his FSA credits. Id.[1]  On April 10, 2025, while his complaint was pending, he received a response to his appeal informing him that he was not subject to a final order of removal and that his FSA credits would be counted. See Docket No. 13-3.  On May 12, however (less than two months from his release date counting his FSA credits), the BOP backtracked, informing Sánchez that they received an immigration detainer stating that there was a final order of removal against him. (Docket No. 31-3 at p. 42.)  Consequently, the BOP said that he was not eligible for FSA credits. Id.

    The warden moves to dismiss the complaint and makes two arguments to support his motion. (Docket No. 31.)  First, the warden moves for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1)"), arguing that the Court does not have jurisdiction to consider Sánchez's complaint because he failed to fully exhaust his administrative remedies prior to filing it. Id. at pp. 8-11.  Second, the warden moves for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), arguing that Sánchez's request is meritless because he is statutorily ineligible for FSA credits. Id. at pp. 11-15.

---

[1] Plaintiff filed an amended complaint through counsel on June 27, 2025.  See Docket No. 13.

Sánchez concedes that he did not fully exhaust his administrative remedies but argues that his failure to do so should be excused. (Docket No. 37 at pp. 4-8.)  He also argues that he should receive his FSA credits because the warden failed to raise his ineligibility in a timely manner.  Id. at pp. 8-11.

**II.  Legal Standard**

Rule 12(b)(1) allows a defendant to move to dismiss an action for lack of subject matter jurisdiction.  In evaluating a motion to dismiss under Rule 12(b)(1), the court "accept[s] as true the complaint's well-pleaded factual allegations and draw[s] all reasonable inferences in the [petitioner's] favor."  Cangrejeros de Santurce Baseball Club, LLC v. Liga de Béisbol Profesional de P.R., Inc., 146 F.4th 1, 11 (1st Cir. 2025).  The court disregards "statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements, and consider[s] whether the non-conclusory, non-speculative facts support the existence of subject matter jurisdiction."  Id. (quoting Lyman v. Baker, 954 F.3d 351, 360 (1st Cir. 2020) (alterations omitted).  The court "may consider information attached to or incorporated into the complaint, along with facts subject to judicial notice."  Id.

Pursuant to Rule 12(b)(6), a defendant may move to dismiss an action for failure to state a claim upon which relief can be

granted.  "Although dismissals under Rules 12(b)(1) and 12(b)(6) are conceptually distinct, the same basic principles apply in both situations."  Cangrejeros, Loc. cit. (quoting Lyman, 954 F.3d at 359) (alterations omitted).  To survive a Rule 12(b)(6) motion, a complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A court must decide whether the complaint alleges facts which "raise a right to relief above the speculative level."  Id. at 555.  In doing so, a court is "obligated to view the facts of the complaint in the light most favorable to the plaintiffs, and to resolve any ambiguities in their favor."  Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 17 (1st Cir. 2011).

Petitions for *habeas corpus* filed pursuant to section 2241 allow a person "in custody under or by color of the authority of the United States" to "attack the execution, rather than the validity, of his sentence."  28 U.S.C. § 2241(c)(1); Hernández v. Warden FMC Devens, Civil No. 23-11330-MPK, 2023 U.S. Dist. LEXIS 161096, at *4-5 (D. Mass. Sept. 12, 2023) (quoting United States v. Barrett, 178 F.3d 34, 50 n. 10 (1st Cir. 1999)) (internal quotation marks omitted).  "Execution includes such matters as the BOP's calculation of the release date."  Hernández, 2023 U.S. Dist. LEXIS 161096, at *5 (internal quotation marks omitted).

Civil No. 25-1035 (FAB)                                                   6

Section 2241 "has also traditionally been available to inmates challenging the revocation of good-time credits." Francis v. Maloney, 798 F.3d 33, 36 (1st Cir. 2015).

### III. Discussion

#### A.   Exhaustion of Administrative Remedies

The warden's first argument for dismissal is that the Court lacks jurisdiction to hear Sánchez's *habeas corpus* claim because he failed to fully exhaust his administrative remedies. The Court rejects this argument.

Despite the warden's assertion to the contrary, "[t]here is no statutory requirement that a federal prisoner exhaust administrative remedies prior to seeking habeas [*corpus*] relief under 28 U.S.C. § 2241." Williams v. Warden, FCI Berlin, 793 F. Supp. 3d 412, 422 (D.N.H. 2025); see also Idada v. Spaulding, 456 F. Supp. 3d 294, 295-97 (D. Mass. 2020) (explaining why the Prison Litigation Reform Act's mandate to exhaust administrative remedies does not apply to Section 2241 *habeas corpus* petitions challenging the fact or duration of confinement). Consequently, failure to exhaust administrative remedies is not "a jurisdictional bar to consideration of a § 2241 petition for habeas [*corpus*] relief."[2]

---

[2] Although the warden asserts the exhaustion argument under Rule 12(b)(1), because exhaustion is not a jurisdictional requirement, the argument will be considered under Rule 12(b)(6).

Civil No. 25-1035 (FAB)                                                    7

Cockerham v. Boncher, 125 F.4th 11, 16 (1st Cir. 2024) (citing Boumediene v. Bush, 553 U.S. 723, 793 (2008)) (internal alterations and quotation marks omitted).  "Nevertheless, the availability of an administrative remedy sometimes provides a prudential reason not to permit a detainee to seek habeas [*corpus*] relief." Williams, 793 F. Supp. 3d at 422 (citing Cockerham, 125 F.4th at 16) (internal alterations and quotation marks omitted). "Where, as here, Congress has not mandated exhaustion, federal courts have some leeway to relax this requirement."  Anversa v. Partners Healthcare Sys., 835 F.3d 167, 176 (1st Cir. 2016).  "A failure to exhaust may [] be excused when exhaustion would cause the petitioner irreparable harm, such as by requiring him to be incarcerated beyond the date he would otherwise be entitled to release under the FSA."  Williams, 793 F. Supp. 3d at 422.

     Although Sánchez concedes that he failed to fully exhaust his administrative remedies,[3] the Court finds that excusing this requirement is warranted.  Sánchez diligently pursued his administrative options prior to filing his complaint before the Court.  He attempted informal resolution, and when that failed,

---

[3] Sánchez never appealed the BOP's denial of his September 19, 2024 appeal to the general counsel, which is the final step in the BOP's administrative remedy program.  See Docket No. 37 at p. 7 (conceding that Sánchez "filed his Habeas Corpus petition [on] January 21, 2025 previous to receiving [the] BOP's decision on his [September 19, 2024 appeal] and bypassing the final step before the BOP General Counsel[.]"); see also Docket No. 31 at pp. 11-12 (outlining administrative remedy program appeal process).

Civil No. 25-1035 (FAB)                                                           8

requested relief directly from the BOP.  When his request was denied, he timely appealed and waited several months without a response.  With his FSA-adjusted release date approaching, and without having heard from the BOP on his appeal, he requested relief from the Court.  The BOP's answer to his appeal arrived in May 2025 – less than two months before his FSA-adjusted release date.  That date has come and gone, and his scheduled release date (July 2, 2026) is rapidly approaching.  Assuming *arguendo* that his *habeas corpus* claim has merit, he is suffering irreparable harm by remaining incarcerated beyond the date he would otherwise be entitled to release.  And considering how long he waited for responses from the BOP the first time around, were the Court to force him back into the administrative process, he would not likely reach a resolution before his release.  Accordingly, the Court waives the administrative exhaustion requirement and will not dismiss the complaint on that basis.

    **B.  Eligibility for FSA Credits**

    The warden's second argument for dismissal is that Sánchez's *habeas corpus* claim fails on the merits because he is statutorily ineligible for FSA credits.  The Court rejects this argument as well.

    "A prisoner is ineligible to apply time credits [] if the prisoner is the subject of a final order of removal[.]"

Civil No. 25-1035 (FAB)                                                        9

18 U.S.C. § 3632(d)(4)(E)(i).  "This phrase seemingly refers to an order of removal that can *presently* be executed, not some previous order of removal that was already executed."  Rodríguez-García v. Warden, FCI-Herlong, No. 2:23-cv-0849-SCR-P, 2025 U.S. Dist. LEXIS 42999, at *10 (E.D. Ca. Mar. 10, 2025) (emphasis in original); see also Albarrán v. Boncher, Civil No. 22-11777-NMG, 2023 U.S. Dist. LEXIS 84974, at *3-7 (D. Mass. May 11, 2023) (plaintiff was only found ineligible for FSA credits after a previously executed final order of removal was reinstated).  If an individual was previously deported on an order of removal, that order does not automatically render him ineligible for FSA credits because "ICE lacks the legal authority to subject an individual to deportation based on the same removal order more than once."  Id. (citing Morales-Izquierdo v. Gonzales, 486 F.3d 484, 487 (9th Cir. 2007)) (emphasis in original).  If the individual re-enters illegally, however, it is possible to reinstate a previously executed removal order rather than go through the full removal process.  See 8 U.S.C. § 1231(a)(5) ("If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed."); G.P. v. Garland, 103 F.4th 898, 900 (1st Cir. 2024) ("Congress has created an expedited

Civil No. 25-1035 (FAB)                                                10

removal process for noncitizens who reenter the United States unlawfully after having previously been removed.") (internal alterations and quotation marks omitted).  A final reinstated removal order operates like an original removal order and bars an individual's eligibility for FSA credits.  See Albarrán, 2023 U.S. Dist. LEXIS 84974, at *3-7 (finding an inmate subject to a reinstated final order of removal ineligible for FSA credits).

The warden provided the Court with a collection of documents to show that Sánchez is subject to a final order of removal and consequently ineligible for FSA credits.  The first document is a "Notice to Alien Ordered Removed/Departure Verification," dated February 5, 2014, which indicates that Sánchez was deported on February 6, 2014.  See Docket No. 31-1.  The second is a "Warrant of Removal/Deportation," dated September 4, 2014, which contains an attachment indicating that he was deported on September 24, 2014.  See Docket No. 31-2.  The third is a "Notice of Intent/Decision to Reinstate Prior Order," dated September 24, 2014, which reinstated his February 2014 order of removal.  See Docket No. 31-5.  The warden also provided two immigration detainers, dated September 4, 2019 and May 2, 2025, respectively, which state that the Department of Homeland Security "has determined that probable cause exists that the subject is

removable" based on "[a] final order of removal against the alien." See Docket No. 31 at pp. 13-15; Docket No. 31-4.

The Court finds that these materials fail to show that Sánchez is currently subject to an enforceable final order of removal. The February 5, 2014 order was executed the next day. It was reinstated on September 24, 2014, which, as indicated in the warrant of removal, was the same day he was deported for the second time. After his second deportation, it was not enforceable, and the warden has not provided the Court with any evidence that it has been reinstated again since then. The immigration detainers do not imply otherwise. Although they posit that Sánchez is subject to a final order of removal, they do not specify whether the order is currently enforceable or if it has already been executed. Without additional detail, there is nothing to suggest that the order referenced in the immigration detainers is not the same one that was executed years ago.

Accordingly, none of these documents shows that Sánchez was subject to an enforceable final order of removal when his FSA credits were revoked. Because the warden fails to establish Sánchez's ineligibility for the credits, the Court cannot conclude that his *habeas corpus* request is without merit, and consequently, the motion to dismiss must be denied.

Civil No. 25-1035 (FAB)                                                    12

## IV. Conclusion

For the above reasons, the warden's motion to dismiss is **DENIED**. (Docket No. 31.)

**IT IS SO ORDERED.**

San Juan, Puerto Rico, February 2, 2026.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
SENIOR UNITED STATES DISTRICT JUDGE
