## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

**HUGO SANCHEZ GONZALEZ,**
Plaintiff/Petitioner,

v.

**WARDEN MDC GUAYNABO,**
Defendant/Respondent.

CIVIL NO. 25-cv-01035 (FAB)

### SECOND MOTION TO DISMISS PURSUANT TO F.R.C.P 12(b)(6)

**TO THE HONORABLE COURT:**

**COMES NOW**, the United States of America, on behalf of the Bureau of Prisons

(the "United States"), and respectfully moves this Court to dismiss the Petitioner's claims

pursuant to Federal Rule of Civil Procedure 12(b)(6).

### I.    INTRODUCTION

Petitioner filed a Petition for Habeas Corpus relief through which he seeks that the Court

order the Bureau of Prisons ("BOP") to reapply 365 days of alleged earned time credits under the

First Step Act ("FSA") and revise his release date accordingly. DE# 1. He modified his petition

by filing an Amended Complaint on June 27, 2025. DE # 13.  Petitioner's request for relief is

without merit. The FSA explicitly provides that earned time credits do not apply to individuals

subject to a final order of removal, such as Petitioner. Therefore, his petition fails to state a claim

upon which relief can be granted. The Court should dismiss this cause of action.

### II.    FACTUAL AND PROCEDURAL BACKGROUND

1.      Petitioner is a Mexican national.

2.      On February 5, 2014, Petitioner received a final order of removal issued against

him under alien number A-205-061-550, prohibiting him from reentering the United States for a

1

period of 5 years. *See* DE #31-1. Contrary to his allegation in the Amended Compliant, DE #13, p. 3 ¶ 16, he received, signed and printed his right index finger on the order of removal form. *See* DE #31-1, p. 1.

3.      On September 4, 2014, he received yet another order of removal—this time, prohibiting him from reentering the United States for 20 years. *See* DE #31-2. Contrary to his allegation in the Amended Compliant, DE #13, p.3 ¶ 16, he also received, signed and printed his right index finger on the second order of removal form. *See* DE #31-2, p. 2.

4.      On July 15, 2016, he received a **third** Warrant of Removal/Deportation pursuant to which he was taken into custody for execution of a reinstated order of removal (Form I-205) which he signed and on which he affixed his right index fingerprint. *See* Exhibit 1.

5.      On that same date he was provided a Form I-294 *Warning to Alien Ordered Removed or Deported* where he was advised that during his third removal proceeding that he was henceforth "prohibited from entering … or being in the United States … for a period of 20 years from the date [of his removal from the United States] because, after having been previously excluded, deported, or removed … you have been found … to have reentered the United States illegally and have had the prior order reinstated under section 241(a)(5) of the [Immigration and Nationality] Act." *See* Exhibit 1 at 3. He was also advised of those prohibitions on September 24, 2014, during his second removal proceedings. *See* DE 31-2 at 2.

6.      On June 30, 2016, Petitioner signed the Notice of Intent/Decision to Reinstate Prior Order—Form I-871 in which he waived the right to make any statements contesting the determination to remove him as inadmissible into the United States. Exhibit 1 at 4.

7.      He was removed from the United States a third time on August 1, 2016. *See Record of Deportable/Inadmissible Alien* of May 20, 2022. Exhibit 2 at 2.

2

8.      Although Petitioner alleges in his *Amended Complaint* that he has "never received notice of the commencement of immigration proceedings against him…" (DE # 13, p. 3) he has, as a matter of uncontested fact, been the subject to three final orders of removal which he personally received, signed and fingerprinted. *See* DE #31-1 and 31-2 and Exhibit 1.

9.      On November 14, 2018, Petitioner was sentenced to 120 months of imprisonment after being convicted for one count of conspiracy to distribute 50 grams or more of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and §846. *See United States v. Sanchez-Gonzalez*, No. 3:17-cr-2201-CAB DE# 172.

10.     On September 4, 2019, the Department of Homeland Security ("DHS") issued an DHS Form I-247 Immigration Detainer and Notice of Action ("Immigration Detainer") notifying the BOP that there was final order of removal issued against Petitioner. *See* DE #31-4 at 1.

11.     On May 20, 2020, Petitioner was once again identified by the U.S. Department of Homeland Security ("DHS") as a deportable or inadmissible alien found within the United States after he was referred his record for evaluation by the Taft Federal Correctional Institution where he was housed in 2020, and DHS proceeded to **reinstate the deportation order**. *See* Exhibit 2 at 1.

**12.     The Petitioner is also the subject of a fourth Notice of Intent/Decision to Reinstate Prior Order of removal authorized on May 29, 2020, which remains unexecuted because Petitioner has been under custody of the Bureau of Prisons since November 14, 2018. *See* Exhibit 3 at 2. This final order of removal has not been served on Petitioner. *Id.***

13.     On May 2, 2025, DHS issued a second Immigration Detainer notifying the BOP that there was final order of removal issued against Petitioner and that there were ongoing removal proceedings pending against Petitioner. DE #31-4 at 4.

3

14.     On August 21, 2024, Petitioner filed a request for administrative remedy ("BP-09 Form") seeking application of earned time credits under FSA. *See* DE #31-3 at 39 ("ABSTRACT: I/M REQUESTING FSA CREDITS BE APPLIED").

15.     On August 26, 2024, the warden denied the BP-09 request because Petitioner was ineligible due to being the subject of a final order of removal.  *See* DE #31-3 at 36 ("STATUS DT: 08-26-2024 STATUS CODE: CLD STATUS REASON: DNY") and at 40.

16.     On September 19, 2024, Petitioner appealed the denial of the BP-9 by filing a BP-10 Form with the BOP Regional Director. *See* DE #31-3 at 37.

17.     On April 10, 2025, BOP issued a response to the BP-10 where it **erroneously stated** that Petitioner did not currently have a final order of removal under immigration laws and was eligible to earn First Step Act time credits. *See* DE # 13-3.

18.     On April 10, 2025, an Amended Response to Petitioner's BP-10 Form was issued **to correct** BOP's explanation of the impact of the Petitioner's ICE detainer on his ability to obtain FSA credit. *See* DE #31-3 at 42. The Amended Response explained that the BOP "received from the U.S. Department of Homeland Security an Immigration Detainer — Notice of Action dated September 5, 2019, which states that there is a final order of removal against you. Accordingly, by law the BOP may not apply any FTCs you have earned toward either prerelease custody or early transfer to supervised release." *Id.*

19.     On May 13, 2025, the BP-10 Form was denied for the same reason stated in the previous denial: Petitioner is subject to a final order of removal. *See* DE #31-3aT 3 ¶ 18 and 37 ("STATUS DR: 05-13-2025 STATUS COD: CLD STATUS REASON: DNY" … "REMARKS ..: AMENDED CORRECTION DUE TO INMATE SUBJECT TO A FINAL ORDER OF REMOVAL").

4

20.     Petitioner did not file an appeal of the May 13, 2025, adjudication to the BOP's Office of General Counsel through a "BP-11" Form, which was the next course of action if Petitioner wanted to move forward with his claim. *See* DE #31-3 at 3 ¶ 19.

21.     Petitioner filed an Amended Complaint on June 27, 2025. DE # 13.

22.     Petitioner does not deny that he is the subject of a final order of removal, he just claims he has not been provided a copy of the document. DE #13 at 5 ¶ 23.  He also does not deny that aliens subject to a final order of removal are ineligible for FSA credit. DE #13 at 4 ¶ 17.

## III.   STANDARD OF REVIEW

### A.  Failure to State a Claim Upon Which Relief Can Be Granted Pursuant to F.R.C.P. 12(b)(6)

Motions to dismiss habeas petitions are examined according to the same principles as a motion to dismiss a civil complaint under Federal Rule of Civil Procedure 12(b)(6)." *Walsh v. Boncher*, 652 F. Supp. 3d 161, 164-65 (D. Mass. 2023) (citing cases in which Rule 12(b)(6) standard was applied to habeas petition brought under 28 U.S.C. §§ 2241 and 2254).  As indicated in *Walsh v. Boncher*, supra, 2023 WL 363591, at *2, precisely in the context of a § 2241 petition, "[a] court examines 'a motion to dismiss a habeas petition according to the same principles as a motion to dismiss a civil complaint under Federal Rule of Civil Procedure 12(b)(6)'.". Thus, to survive a motion to dismiss, the complaint must contain enough facts to state a claim to relief that is plausible on its face. *Id.*, citing, among others, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

In evaluating whether plaintiffs are entitled to relief, the court must accept as true all "well-pleaded facts [and indulge] all reasonable inferences" in plaintiffs' favor." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). To survive a Rule 12(b)(6) motion to dismiss, Petitioners' "well-pleaded facts must possess enough heft to show that they are entitled to relief."

*Clark v. Boscher*, 514 F.3d 107, 112 (1st Cir. 2008). The First Circuit has held that "dismissal for failure to state a claim is appropriate if the complaint fails to set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008).

Thus, petitioners must rely on more than unsupported conclusions or interpretations of law, as these will be rejected. *Berner v. Delahanty*, 129 F.3d 20, 25 (1st Cir. 1997) (citing *Gooleyv. Mobil Oil Corp.*, 851 F.2d 513,515 (1st Cir. 1988)). Although complaints do not require detailed factual allegations, the plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Twombly*, at 556.

In *Ashcroft v. Igbal*, 556 U.S. 662 (2009), the Supreme Court of the United States ("Supreme Court") reaffirmed *Twombly* and clarified that two underlying principles must guide a court's assessment of the adequacy of pleadings when evaluating whether a complaint can survive a Rule 12(b)(6) motion. *See Igbal*, 556 U.S. at 677-79. First, the court must identify any conclusory allegations in the complaint as such allegations are not entitled to an assumption of truth. *Id.* at 679. Specifically, the court is not obligated to accept legal conclusions set forth as factual allegations in the complaint. *Id.* Moreover, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (quoting *Twombly*, 550 U.S. at 555). Second, a complaint survives only if it states a plausible claim for relief. *Id.* (citing *Twombly*, 550 U.S. at 556). Thus, any nonconclusory factual allegations in the complaint, accepted as true, must be sufficient to give the claim facial plausibility. *Id.*

**B.  First Step Act ("FSA")**

The First Step Act ("FSA"), Pub. L. No. 115-391, 132 Stat. 5194 (2018), authorizes eligible prisoners to earn time credits for completing recidivism reduction programs. 18 U.S.C.

§ 3632(d)(4). However, Congress explicitly excluded inmates who are subject to a final order of removal from applying those credits towards prerelease custody or early supervised release. 18 U.S.C. § 3632(d)(4)(E)(i); *see also* 8 U.S.C. § 1101(a)(17) (defining "immigration laws"). Thus, even if an inmate earns FSA credits, they are statutorily ineligible to have those credits applied if they are subject to a final removal order. Therefore, when an inmate challenges BOP's calculation or application of FSA credits, the court must first determine whether the inmate is substantively eligible for such credits under § 3632.

IV.    **PETITIONER FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED**

A.  **Petitioner's claim is without merit**

Petitioner is ineligible for FSA credits because he is subject to a final order of removal as established in the DHS Forms I-247 Immigration Detainer and Notice of Action dated September 4, 2019 and May 2, 2025. *See* **Exhibits 2 at 1 and 3 at 2.** Contrary to his allegations in the Amended Complaint where he claims that on the BP-10 Response of April 10, 2025, the Regional Director responded that there was no final order of removal, Petitioner has always been well aware of his status as an inadmissible alien. The Form I-294 Warning to Alien Ordered Removed or Deported that he was provided on July 15, 2016, when he was subjected to his third removal proceeding, he was advised that he was "prohibited from entering … or being in the United States … for a period of 20 years from the date [of his removal from the United States] because, after having been previously excluded, deported, or removed … you have been found … to have reentered the United States illegally and have had the prior order reinstated under section 241(a)(5) of the [Immigration and Nationality] Act." *See* Exhibit 1 at 3. He was also advised of those prohibitions on September 24, 2014, during his second removal proceedings. *See* DE 31-2 at 2.

7

In ¶17 of Petitioner's *Amended Complaint*, Petitioner acknowledges that FSA language expressly excludes a prisoner subject of a final order of removal from having FSA credits applied toward prerelease custody or early transfer to supervised release. DE # 13, p. 4 ¶ 17; *see also* 18 U.S.C.A. § 3632(E)(i) ("A prisoner is ineligible to apply time credits under subparagraph (C) if the prisoner is the subject of a final order of removal under any provision of the immigration laws (as such term is defined in section 101(a)(17) of the Immigration and Nationality Act (8 U.S.C. 1101(a)(17)))."). Accordingly, as provided by the applicable federal law, since Petitioner is statutorily ineligible to receive FSA credits because of his final order of removal, the Petition should be denied.

Beyond the statutory exclusion, Petitioner's attempt to dispute the existence of a final order of removal cannot withstand scrutiny. The existing and unexecuted final order of removal resolves any doubt on this matter. *See* Exhibit 3 at 2.

Petitioner's unsupported claim that he is merely subject to a "detainer" is directly contradicted by these official documents, and he always known about his excludability. *See* Exhibit 1 at 3 and DE #31-2 at 2. The Bureau of Prisons, therefore, acted properly in determining that Petitioner is ineligible for FSA credits and in denying his requests for such credit.

Petitioner's attempt to play a game of gotcha with federal agencies is not a substantive basis for entertaining his frivolous claim. His baseless demand that BOP "produce a copy of the final order of removal" before implementing the strictures of 18 U.S.C § 3632 to deny him FSA credits was and continues to be without merit. The Court should not credit Petitioner's baseless allegations and demands over removal orders Petitioner was fully cognizant existed and curtailed his claims.

Furthermore, the statutory framework of the First Step Act removes any discretion from the Court to grant the requested relief: prisoners subject to final removal orders are categorically excluded from eligibility for time credits. Congress's use of mandatory language ("is ineligible") leaves no room for judicial reinterpretation. Petitioner's insistence on eligibility, despite the unambiguous statute, demonstrates not a legitimate legal controversy but an attempt to secure benefits Congress has deliberately withheld from noncitizen inmates under final removal orders. His claim must therefore be dismissed.

**B.  A Detainer is an Official Document from a Government Agency**

Furthermore, Petitioner's attempts to minimize the weight of the immigration detainers issued against him, but this argument collapses under the facts of record. DHS issued to the BOP two Forms I-247 Immigration Detainer and Notice of Action expressly notifying the agency that Petitioner was subject to a final order of removal and therefore not eligible for the application of earned time credits. *See* DE #31-4. A detainer of this nature is not an informal memorandum or suggestion; it is an official document generated by a federal agency charged with enforcing immigration law. Its issuance carries legal consequences, including the confirmation of the existence of an enforceable removal order.

The Bureau of Prisons properly relied on these DHS detainers when denying Petitioner's BP-9 and BP-10 administrative remedies. The Warden and the Regional Director did not manufacture a basis to deny Petitioner's request. Rather, they applied the plain statutory language of the FSA, which excludes inmates who are the subject of a final order of removal from receiving earned time credits. Their consistent reliance on DHS's official communication underscores that the denial of credits was not arbitrary but grounded in the law and in legitimate government records.

Petitioner's attempt to highlight an erroneous agency response on April 10, 2025, that mistakenly stated he was not subject to a final order of removal (DE #13-3) but was diligently corrected on May 12, 2025 (DE #31-3 at 42), does not change the factual background and legal consequences in this case. The BOP's May 12, 2025, Amended Response, which corrected the error and unequivocally confirmed that Petitioner is in fact subject to a final order of removal and therefore ineligible for FSA credits, was notified to Petitioner prior to the filing of the Amended Complaint.

Agencies not only may, but are obligated, to amend or correct prior misstatements when new information or clarification is required. That is precisely what occurred here. A clerical or interpretive mistake does not invalidate the controlling fact that Petitioner is legally subject to a final removal order (Exhibit 2 at 1 and 3 at 2); it simply underscores the agency's duty to ensure the record is accurate. Courts have long recognized that administrative agencies may issue amended determinations to correct errors, and such corrections carry full legal effect. BOP's amended response reflects the true and operative determination of Petitioner's status, and the Court must credit the corrected agency record over Petitioner's self-serving assertions.

Ultimately, the detainers are official government records that directly resolve the eligibility question. The BOP acted reasonably and lawfully in denying Petitioner's requests based on these documents. Petitioner's disregard of these official determinations does not erase their existence or their legal effect. The Court should therefore give full weight to the detainers and the unexecuted final order of removal of May 29, 2020 (Exhibits 2 at 1 and 3 at 2) as evidence of the fact that **Petitioner is the subject of an unexecuted final order of removal** and dismiss the petition, because the law renders him ineligible for the relief he seeks.

## V.    CONCLUSION

For the foregoing reasons, Petitioner's claim fails as a matter of law because he is statutorily ineligible for First Step Act credits due to the unexecuted final order of removal pending against him, as confirmed by DHS's official detainers. Petitioner's allegations are conclusory, unsupported by facts, and squarely foreclosed by the governing statutes.

**WHEREFORE**, Defendant respectfully requests that this Honorable Court dismiss Petitioner's Petition for Writ of Habeas Corpus and Amended Complaint in its entirety pursuant to Fed. R. Civ. P. 12(b)( 6).

**I HEREBY CERTIFY** that on this date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to all parties.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, on February 3, 2026.

**W. STEPHEN MULDROW**
United States Attorney

*s/Dennise N. Longo Quiñones*
DENNISE N. LONGO QUIÑONES
Assistant U.S. Attorney
USDC-PR 211408
Torre Chardón, Suite 1201
350 Carlos Chardón St.
San Juan, Puerto Rico 00918
Tel. (787) 282-1928
Fax. (787) 771-4043
E-mail dennise.longo.quinones@usdoj.gov